## KIGGINS v. KENNON.
### No. 11804.

Court of Civil Appeals of Texas. Galveston.
Oct. 24, 1946.

Rehearing Denied Nov. 14, 1946.

Blades, Chiles, Moore & Kennerly, Fred W. Moore, and Geo. A. Hill, III, all of Houston, for appellant.

Hardway, Harwell, Smith & Gwin and Paul A. Smith, all of Houston, for appellee.

CODY, Justice.

This is a suit by appellant against appellee to recover damages for the breach of a written contract executed April 23, 1940, by the terms of which appellant granted to appellee the exclusive right to manufacture and sell an article invented by appellant, and which the parties call a tank carrier.

Appellant alleged in his petition that, by the terms of the contract (copy of which was attached to his petition, and is appended to this opinion), appellee was bound to use his best endeavors to promote the sale and use of the tank carriers. Appellant alleged further that appellee agreed to sell,

not less than 60 of the tank carriers during the first year's operation, and not less than 200 carriers under the second year's operation, and not less than 300 carriers each successive year thereafter. Appellant alleged a breach in the contract in that appellee had not used his best endeavors to promote the sale of the tank carriers, and had sold only 48 tank carriers since June 22, 1940.

Appellee answered, urging certain special exceptions, a general denial, and pled specially that his (appellee's) obligation was only to pay appellant as a royalty on each tank carrier actually sold by him ten per cent of the gross amount received from such sales. Appellee further pled in substance that the yearly minimum sales provision of the contract merely constituted the basis for appellant to exercise a right to cancel the contract, and to calculate the price that must be paid by appellee to keep the contract in force if appellant desired to terminate. Appellee denied the contract contained any agreement which bound him to pay any royalty on any tank not actually sold by him.

Upon the court sustaining the special exception urging the four year statute of limitations, appellant by trial amendment urged his asserted cause of action insofar as same was not barred.

The case was tried before a jury. At the close of the evidence both sides moved for an instructed verdict, and the court refused both motions, and submitted three special issues to the jury. Upon the coming in of the verdict the appellant moved for judgment notwithstanding the verdict, and appellee moved for judgment upon the verdict. Appellant's motion was refused, and appellee's granted. Accordingly, judgment was rendered that appellant (plaintiff) take nothing, and that appellee recover his costs.

The jury found in answer to special issue No. 2, that appellee had used his best endeavors to promote the sale and use of the tank carrier, and appellant in no way attacks such finding. The jury found in answer to special issue No. 1 that both the plaintiff (appellant) and defendant (appellee) did not intend that "the contract in question should bind and obligate the defendant to pay plaintiff a 10% royalty on the minimum sales provided for in the contract so long as the contract remained uncancelled or otherwise." Special Issue No. 3 was not answered.

Upon appeal appellant complains of the submission by the court to the jury of the written contract for construction of its meaning, and further complains that the court did not construe the intention of the parties as a matter of law, and render judgment upon such construction for appellant.

The first six points upon which appellant predicates his appeal urge in various forms that the action of the court in submitting special issue No. 1, and in rendering judgment upon the answer thereto, constituted reversible error.

Appellant's seventh point reads: "The contract here sued upon was prepared by defendant; that is, by defendant's attorney, who had represented defendant for more than twenty-five years. Plaintiff was not represented by attorney in the preparation of the said contract. Consequently, the language of the contract will be construed more strongly against the defendant who was the party who wrote the contract."

Appellant's eighth point reads: "The proper measure of damages to which plaintiff is entitled because of defendant's failure or refusal to perform his agreement to sell a certain guaranteed minimum number of carriers each year is the royalty of ten percent of the gross sales price per carrier multiplied by each respective yearly minimum for the period in question."

Appellant's ninth point: "The contract remedy of cancellation given plaintiff by the terms of the agreement in the event defendant should fail to consummate the guaranteed yearly minimum sales specified in such agreement was not an exclusive remedy, being merely permissive and plaintiff therefore had the right to sue for damages on account of defendant's admitted breach of his obligation to sell a guaranteed minimum."

It was undisputed that appellee had sold but 48 of the tank carriers up to the date

of the trial. And the jury found that appellee had used his best endeavors to promote the sale and use of said tank carriers, which finding is not complained of by appellant in any way.

The portions of the contract here sued on which are particularly relevant are in paragraphs III and IV thereof. Under paragraph III appellee agreed to pay appellant as a royalty upon every tank carrier sold by him 10% of the gross amount received from such sales.

Paragraph IV contains the provision requiring appellee to use his best endeavors to promote the sale and use of the tank carrier; and also contains the provision as to the yearly minimum sales by appellee. There is no dispute between the parties except as to the proper construction to be placed on the provision relating to the payment of a royalty on the yearly minimums. Both parties contend that said provision is plain and unambiguous. Appellant contends that by said provision appellee was clearly obligated to pay appellant a royalty on the minimum sales therein provided for, whether the minimum number was sold or not. Whereas appellee just as vigorously claims the provision imposes no obligation on appellee to pay a royalty on the yearly minimums mentioned in paragraph IV, unless appellant exercises his option to cancel and appellee, in turn, elects to pay a royalty thereon in order to keep the contract in force.

It will be noted that the agreement of appellee to sell the yearly specified minimums is very clearly stated. But within the same sentence, and immediately following such agreement by appellee to sell the yearly specified minimums, there is set forth a proviso. It reads: "provided, however, if the sales for any particular year do not amount to as much as the minimum provided for said year, the Licensor (appellant) may, within sixty (60) days after the expiration of said year * * * cancel and terminate this contract; however, * * * the Licensee (appellee) may preserve and keep this contract in force by at once paying to Licensor any additional royalties not theretofore paid by Licensee for said year suffi-

cient to bring the total royalties for said year up to said minimum; * * * if said minimum sales is not reached during any year and the Licensor * * * gives Licensee said written notice of his intention to terminate this contract the Licensee may accept such written notice and terminate the contract and *in such event Licensee shall only be required to pay royalties on the tank carriers actually theretofore sold by Licensee and on which royalties have not already been paid.*" (Emphasis ours.)

"'The word "provided" in common speech naturally expresses a qualification, limitation, condition, or an exception respecting the scope and operation of the words previously used. "Although a proviso in statutes, contracts or wills not infrequently introduces new or independent matter, its true office and its general purpose is to restrict the sense or make clear the meaning of that which has gone before."'" Knight v. Chicago Corp., Tex. Sup., 188 S.W.2d 564, 567. There is nothing here to suggest that the proviso, which is here attached to the yearly minimum sales provision of the contract was not placed there to qualify and limit it. We must therefore conclude, looking only to the agreement as expressed between the parties, that appellee did not unconditionally agree to sell the specified yearly minimums. Nor was appellee liable here to pay appellant royalties except on tank carriers actually sold by him.

If we are wrong in concluding that the yearly minimum sales provision of the contract, as qualified and limited by the proviso attached thereto, is not ambiguous, and if its meaning is ambiguous, then the issue as to its true meaning was one of fact for the jury. See Ellisor v. Kennedy, Tex. Civ.App., 128 S.W.2d 842, 844, writ refused; Stanolind Oil & Gas Co. v. Terrell, Tex.Civ.App., 183 S.W.2d 743, 745. And we think the meaning thereof was sufficiently submitted to the jury.

We overrule appellant's points, and find that the judgment should be affirmed; it is so ordered.

Affirmed.

## Exhibit

State of Texas

County of Harris

This Agreement entered into this day between Delbert Kiggins, hereinafter called Licensor, and L. H. Kennon, d.b.a. L-K Pump Valve Company, of which he is the sole owner, hereinafter called Licensee, both of Harris County, Texas.

Witnesseth

Whereas, Licensor represents and warrants that he is the sole owner of all rights, title and interest in and to a certain invention on a Tank Carrier disclosed in an application for United States Letters Patent therefor executed by the Licensor on the 23rd day of April, A.D.1940; and

Whereas, Licensee desires to acquire sole and exclusive right and license to manufacture and sell Tank Carriers embodying the invention disclosed by said application and all improvements thereon during the life of said application and patent, or patents, to be issued on said invention and improvements.

Now, therefore, in consideration of the premises and the sum of Ten ($10.00) Dollars paid by the Licensee to the Licensor, the receipt of which is hereby acknowledged, and of the mutual covenants herein contained, the parties hereto agree as follows:

I. Licensor hereby grants unto the Licensee and to his legal representatives, upon the terms and conditions hereinafter set forth, the sole and exclusive right and license to manufacture and sell tank carriers embodying the said invention and all improvements thereon now or hereafter made by the Licensor, within and throughout the United States of America, its territories and possession and in all foreign countries to the full ends of the respective terms for which letters patent and any renewals, reissues and extensions thereof may be granted, or until the earlier termination of this agreement in the manner hereinafter provided.

II. The Licensee agrees to keep accurate books of account relating to the manufacture and sale of all tank carriers manufactured and sold under this license. Licensee agrees to render a full statement in writing to the Licensor on or before the 25th day of each calendar month showing all of said tank carriers sold under this license during the preceding calendar month, said statement to show the selling prices of the carriers as shown in said statement.

III. Licensee agrees to pay to the Licensor as a royalty upon each and every tank carrier sold by him Ten (10%) per cent of the gross amount received from such sales. The said royalties shall be paid to the Licensor on or before the 25th day of each and every calendar month during the term of this agreement with respect to tank carriers sold during the preceding calendar month, payment to be made by mailing to the Licensor checks for the required amount addressed to him at his last known mailing address.

IV. Licensee agrees to manufacture said tank carriers in a good and workmanlike manner of suitable material for the purpose and agrees to use his best endeavors to promote the sale and use thereof. The Licensee further agrees that for the first year beginning sixty (60) days from the date hereof, he will sell not less than sixty (60) of said tank carriers and for the second year he will sell not less than two hundred (200) of said tank carriers and for each succeeding year will sell not less than three hundred (300) of said tank carriers, as a minimum; provided, however, if the sales for any particular year do not amount to as much as the minimum provided for said year, the Licensor may, within sixty (60) days after the expiration of said year, by first giving notice in writing to the Licensee, cancel and terminate this contract; however, upon the receipt of such notice the Licensee may preserve and keep this contract in force by at once paying to the Licensor any additional royalties not theretofore paid by Licensee for said year sufficient to bring the total royalties for said year up to said minimum; it is further provided, however, that if said minimum sales is not reached during any year and the Licensor within said sixty (60) days period, as above provided, gives Licensee said written notice of his intention to terminate

this contract the Licensee may accept such written notice and terminate the contract and in such event Licensee shall only be required to pay royalties on the tank carriers actually theretofore sold by Licensee and on which royalties have not already been paid.

V. Should Licensee fail to make the monthly royalty payments as hereinabove provided Licensor may terminate this agreement by giving the Licensee sixty (60) days written notice of his intention to terminate it provided that if Licensee shall within said period of sixty (60) days correct the default by paying to the Licensor all royalties due Licensor such notice shall be without effect and this License shall continue in full force and effect. The termination of this license for any cause shall not prejudice the right of Licensor to recover any royalties due at the time of the termination. Should this contract be terminated by the Licensor, he, the said Licensor, agrees to either purchase all of the carriers, parts thereof, and patterns therefor, that the Licensee may then have on hand, for the amount that the same cost the Licensee; or allow the Licensee the right to sell the carriers then made up and to assemble parts then on hand into carriers and sell them, Licensee to pay the regular royalties hereinabove provided thereon on the 25th day of the month following the month during which the sales are made.

VI. Tank Carriers covered by this agreement shall be marked "Patent Pending" until a patent is granted thereon and thereafter shall be marked as the law requires to indicate that they are patented articles.

VII. Licensee may terminate this agreement at any time by mailing or delivering to the Licensor written notice of his intention to so terminate it sixty (60) days before such termination.

VIII. Licensee agrees to bear the necessary expense incident to an endeavor to procure United States Patent, or Patents, on said tank carriers and it is agreed by Licensor that the amount so incurred and expended by Licensee shall be deducted and repaid to the Licensee from royalties as and when the same accrue.

IX. Any sale or other disposition made by the Licensee of said Tank carriers manufactured by him or for him shall be treated as a sale so far as estimation of royalties are concerned whether made directly by the Licensee or through some subsidiary organization or selling or other intermediate agency.

X. In the event the Licensor, during the term of this agreement, shall desire to sell said invention, or any improvements thereon, or any patent relating thereto, he shall first give the Licensee the first opportunity to purchase the same at a price to be mutually agreed upon, which price shall be no greater than that for which said invention, improvements or patents are offered for sale to any other purchaser.

XI. The License herein granted and all rights accruing hereunder shall inure to the benefit of the Licensee, his heirs and legal representatives.

XII. Payments to be made hereunder to the Licensor may be effectively made by mailing a check for the required amount to him at his address and notices provided for herein to be given may be effectively given by mailing the same by registered mail properly addressed. For the purpose of making payments and giving notices the addresses of the parties hereto are as follows:

Delbert Kiggins  P. O. Box 5026

    Harrisburg Station, Houston, Texas.

L. H. Kennon

    634 N. Edgewood,  Houston, Texas.

or to such subsequent addresses as either party hereto may furnish to the other party hereto in writing.

In Witness Whereof, the parties hereto have signed this agreement this 23rd day of April, A. D. 1940.

        Delbert Kiggins

        L. H. Kennon

(Acknowledgment omitted)