The CITY OF HOUSTON, Petitioner,

v.

CLEAR CREEK BASIN AUTHORITY,
Respondent.

No. B–8084.

Supreme Court of Texas.

Oct. 3, 1979.

Robert M. Collie, Jr., City Atty., Fulbright & Jaworski, David J. Beck, Houston, for petitioner.

Kronzer, Abraham & Watkins, Robert E. Ballard, Houston, for respondent.

SPEARS, Justice.

Respondent Clear Creek Basin Authority, a statutory governmental entity existing under article 8280-311 (1965), sued the City of Houston for injunctive relief and statutory penalties, alleging the unlawful discharge of waste waters by treatment plants operated by the City in violation of chapter 26 of the Texas Water Code.[1] The trial court granted summary judgment for the City of Houston, but the court of civil appeals reversed and remanded. 573 S.W.2d 839.

Two questions are presented: (1) whether the respondent, Clear Creek Basin Authority, properly presented its objections to the summary judgment under rule 166–A(c)

---

1. All references to statutes are to Texas Revised Civil Statutes Annotated; all references to rules are to the Texas Rules of Civil Procedure.

which provides that only "expressly presented" issues may be considered on appeal as grounds for reversal; and (2) whether the respondent Clear Creek, plaintiff below, has standing to sue under the provisions of the Texas Water Code § 26.-001 et seq., which prohibits the unauthorized discharge of polluting waste waters, for discharges occurring upstream and *outside* its territorial boundaries. Because the answer to both questions is "no," we reverse the court of civil appeals and affirm the summary judgment entered by the trial court.

Clear Creek's suit alleges numerous violations of waste control orders of the Texas Water Quality Board and a common law nuisance as a result of the discharge of sewage into waters which ultimately flow into Galveston Bay. The Attorney General of Texas, on behalf of the Texas Water Quality Control Board and the State of Texas, intervened as a necessary party-plaintiff pursuant to the requirement of the Texas Water Code.

Clear Creek alleged in its first amended original petition that the City of Houston had committed numerous violations at 31 different locations. Defendant City admitted that four of these plants discharging effluent are situated within the territorial boundaries of Clear Creek Basin Authority set forth in section 2 of Article 8280–311, *supra,* and that these four plants exceeded the terms of the City's permit from the Water Quality Control Board during the periods of 1974 and 1976. The remaining plants were located upstream and outside of Clear Creek's territorial jurisdiction.

The City of Houston filed a motion for summary judgment, alleging three grounds:

1. The matters upon which Clear Creek bases its claims for relief fall within the primary jurisdiction of the Texas Water Quality Board; Clear Creek has failed to exhaust its administrative remedies; and that neither the Texas Water Quality Board nor the Texas Department of Water Resources has authorized the bringing of this action;

2. As a matter of law, Clear Creek cannot obtain relief for violations of the Texas Water Code which occur outside the territorial jurisdiction of the Authority; and

3. The action represents an attempt by Clear Creek to perform a function or service which the City of Houston is authorized to perform without the written consent of the governing body of the City of Houston, all in violation of Article 8280–311, sec. 5.

Clear Creek filed this response to the motion:

### I.

The only issue before this Court is a question of law: can a downstream victim of pollution sue an upstream polluter?

### II.

The City has admitted that its sewer plants exceed the parameters of its permits on a regular basis. See Answers to Admissions and Interrogatories.

### III.

The City's effluent is flushed into Clear Lake on a daily basis and causes pollution there. See deposition testimony of Sidney H. Tanner and Affidavits on file.

There is no *verbatim* record of the hearing on the motion, but the trial court's judgment recites that at the hearing, Clear Creek withdrew its common law cause of action in open court and announced its desire to proceed only on the basis of its claims under chapter 26 of the Texas Water Code. It further recites that the City of Houston withdrew paragraphs 1 and 3 of its motion for summary judgment and desired to proceed to hearing only on paragraph 2 challenging Clear Creek's right to sue for violations outside its jurisdictional boundaries. In this context, the trial court granted the City's motion for summary judgment.[2]

---

2. The pertinent part of the trial court's judgment reads:

BE IT REMEMBERED that on the 3rd day of April, 1978, came on to be heard the mo-

In the meantime, and apart from the summary judgment proceeding, the City of Houston and the state Attorney General worked out a settlement agreement between them to which Clear Creek was not a party. The settlement agreement was incorporated in the trial court's final judgment but was made expressly contingent upon the judgment that Clear Creek take nothing being upheld on appeal. The settlement provided for an agreed injunction judgment obligating the City to construct and place into operation some $500,000,000 worth of additional waste water treatment plants, sludge disposal plants, and sewage diversion lines with a reporting schedule to the Texas Department of Water Resources and to the trial court.

The court of civil appeals, in reversing and remanding the cause for trial, held that a fact issue existed as to the alleged violations occurring *within* Clear Creek's territorial boundaries. The court reasoned that even if the admitted fact of those violations was not presented to the trial court at the hearing on summary judgment, this part of Clear Creek's cause of action was not waived because there was no written agreement of waiver filed under rule 11. The court said that the City had not carried its burden and was not entitled to a summary judgment despite Clear Creek's failure to specify the reasons why the motion should not be granted.

Petitioner City of Houston asserts nine points of error. The first alleged error is that the judgment of the court of civil appeals is erroneous for the reason that it is contrary to the requirement of rule 166–A, that "[i]ssues not expressly presented to the trial court by written motion, answer or other response, shall not be considered on

tion for summary judgment of defendant, The City of Houston, with respect to *all* claims and causes of action asserted in this suit by the plaintiff, Clear Creek Basin Authority, and came on to be heard the joint motion of plaintiff-intervenor, the Attorney General of Texas acting for and on behalf of the State of Texas and the Texas Water Quality Board, now the Texas Department of Water Resources, and defendant, The City of Houston, to enter judgment resolving *all* claims and causes of action asserted by the Attorney General of Texas acting for and on behalf of *the State of Texas, against The City of Houston,* whereupon the Court proceeded to hear the motion for summary judgment of The City of Houston with respect to *all* claims and causes of action asserted by the Clear Creek Basin Authority; and counsel for Clear Creek Basin Authority *having represented in open court* to the Court that the Clear Creek Basin Authority desired to withdraw from its First Amended Original Petition all claims and causes of action asserted against The City of Houston predicated on the theory of common law nuisance and desired to proceed only against The City of Houston on the basis of its claims and causes of action asserted against The City of Houston under Chapter 26 of the Texas Water Code, and defendant, The City of Houston, *having represented to the Court* that should this matter be reversed and remanded for a new trial, it would have no objection to the Clear Creek Basin Authority amending *its* pleadings to reassert the claims and causes of action asserted against The City of Houston based on the common law nuisance theory, and The City of Hous-

ton *having further represented to the Court* that it desired to withdraw from consideration by the Court paragraphs I and III of its motion for summary judgment and to proceed to hearing only on paragraph II of its motion for summary judgment, which complains that the Clear Creek Basin Authority is not entitled to sue for or obtain injunctive relief or penalties against The City of Houston under Chapter 26 of the Texas Water Code for violations which occur outside of the jurisdictional or geographical boundaries of the Clear Creek Basin Authority, and the Clear Creek Basin Authority having proceeded to file its response and affidavits in opposition to the motion for summary judgment of The City of Houston, and the City having agreed to waive any objections to the late filing of said response and affidavits, and the Court, after considering the motion for summary judgment, the summary judgment evidence, the pleadings on file herein, and the representations, stipulations, and arguments of counsel, and it being the opinion of the Court that the motion for summary judgment of The City of Houston should be in all things granted, it is, therefore;

ORDERED, ADJUDGED and DECREED that the motion for summary judgment of defendant, The City of Houston, be, and the same is hereby in all things GRANTED, and it is further ORDERED, ADJUDGED and DECREED that plaintiff, Clear Creek Basin Authority, do have and recover nothing of or from defendant, The City of Houston. (Emphasis added.)

appeal as grounds for reversal." The remaining points claim that Clear Creek waived and abandoned any fact issue and that it is estopped from asserting any complaints of violations occurring within the geographical boundaries of the Clear Creek Basin Authority.

■ The first question is whether the 1978 amendment to rule 166–A(c), providing that issues not expressly presented to the trial court may not be considered on appeal as grounds for reversal, precludes the court of civil appeals from reversing the summary judgment when the non-movant agreed to the submission to the trial court of a single issue of law. We hold that because the parties agreed on the submission of only one issue to the trial court and its ruling on that issue constituted the basis of the granting of the motion for summary judgment, Clear Creek is precluded from later urging on appeal the issue not presented, i. e., the violations of the four plants located within Clear Creek's boundaries.

A history of the summary judgment rule, rule 166–A, reflects that the high hopes of increasing judicial efficiency advanced by the proponents of the rule did not materialize. While no summary judgment rule was included in the initial promulgation of the rules of civil procedure in 1940, after considerable urging by legal scholars and commentators and by the Texas Civil Judicial Council, rule 166–A was adopted by this court, effective March 1, 1950. Pittsford and Russell, *Summary Judgment in Texas: A Selective Survey,* 14 Hous.L.Rev. 854 (1977). Despite predictions of success by its supporters, the rule has been fraught with misunderstanding. One prominent writer observed in 1961 that a poll of district judges throughout the state reflected many were skeptical about the efficacy of the rule

because of frequent reversals by appellate courts. McDonald, *The Effective Use of Summary Judgment,* 15 Sw.L.J. 365, 373–4 (1961). In 1977, a survey concluded that fewer than two percent of the civil cases disposed of in Texas in the six preceding years were decided by summary judgment. *See* Pittsford and Russell, *supra* at 854. Another survey of the cases decided by this court between 1968 and 1976 reflected that when a summary judgment was granted in the trial court, seventy percent of those cases were reversed and remanded for trial. Sheehan, *Summary Judgment: Let the Movant Beware,* 8 St. Mary's L.J. 253, 254 (1976).

Attempts within the bar to clarify summary judgment practice began to gain momentum in the early 1970's. After several unsuccessful attempts at revision, the Committee on the Administration of Justice of the State Bar of Texas voted in March of 1976 to recommend changes in rule 166–A that would require the non-movant to provide some assistance to the trial judge in narrowing the issues to be decided. That proposal was then considered by the Supreme Court Advisory Committee in March of 1977, and after several changes, was recommended to this court for adoption. The proposal recommended significant change in section (c), primarily by requiring the non-movant to "define specifically in writing" the controverted issues and defects in the movant's proof that would defeat the motion. The recorded minutes of the Advisory Committee reflect a prevailing sentiment to change the rule, to make summary judgments a more useful procedure in judicial administration, to require non-movant to specify his opposition to the motion, and to prevent the non-movant from "laying behind the log" within his objections until appeal.[3]

---

3. . The full text of section (c) as recommended by the 1976 Committee on the Administration of Justice of the State Bar of Texas is set forth, showing the proposed additions and deletions. Its suggested deletions in the rule are lined through; the suggested additions are underlined.

In the Advisory Committee's deliberations in 1977, amendments were offered and voted

upon by the members. Words that were added in the Committee's meeting by vote are double underlined, and words deleted by Committee vote are double lined-through.

"(c) Motion and Proceedings Thereon. The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, the motion shall be served at least [ten] twenty-one days before the time

A comparison of section (c) of the rule as it existed before January 1, 1978, and as amended demonstrates the significance of the change in the mechanics of the summary judgment procedure. The new rule adopts the objectives of the Advisory Committee, but goes even further by precluding from consideration on appeal grounds not raised in the trial court in opposition to a summary judgment motion. The pre-1978 summary judgment rule had a chilling effect on the willingness of trial courts to utilize the intended benefits of the procedure. *See* McDonald, *The Effective Use of Summary Judgment*, 15 Sw.L.J. 365, 375–382 (1961). The new rule attempts to encourage the trial court to utilize the summary judgment in appropriate cases.

Prior to January 1, 1978, section (c) read:

(c) Motion and Proceedings Thereon. The motion for summary judgment shall state the specific grounds therefor. The motion shall be served at least ten days before the time specified for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Section (c) now reads:

(c) Motion and Proceedings Thereon. The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, the motion shall be served at least twenty-one days before the time specified for the hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues as expressly set out in the motion or in an answer or any other response. *Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.* A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. (emphasis added)

specified for the hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing, may serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. [The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.]

"If the moving party has by motion, pleadings, depositions, answers to interrogatories, admissions on file, or affidavits relied upon by the moving party, if any, shown that there is no genuine issue for trial, and that the moving party is entitled to judgment as a matter of law, the adverse party may not rest upon the mere allegations or denials of his pleadings, but must define specifically in writing the issue or issues he contends are controverted or point out the defects in the movant's proof, and, if necessary to demonstrate a factual dispute, respond with facts from depositions, answers to interrogatories, admissions on file, affidavits, if any, or written response showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

A concomitant change to section (e) of the rule added this sentence:

> Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

Responding to the criticism that a non-movant could "lay behind the log" in the trial court and urge deficiencies for the first time on appeal, the new section (c) specifically prohibits this tactic by clearly requiring:

> . . . Issues not expressly presented to the trial court by *written* motion, answer or other response shall not be considered on appeal as grounds for reversal. (emphasis added)

■ The word "written" modifies not only the word "motion," but also the words "answer" and "other response." The "issues" required by the rule to be "expressly presented" are those pointed out to the trial court in written motions, written answers or written responses to the motion. The term "answer" in the context of the rule refers to an answer to the motion, not an answer generally filed in response to a petition. *Feller v. Southwestern Bell Tel. Co.*, 581 S.W.2d 775 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ). The movant must also expressly set out his grounds in writing:

> . . . The judgment sought shall be rendered forthwith if . . . and the moving party is entitled to judgment as a matter of law *on the issues as expressly set out in the motion or in an answer or any other response.* (emphasis added)

■ Thus, both the reasons for the summary judgment and the objections to it must be in writing and before the trial judge at the hearing. The appellate court which must later decide whether the issue was actually presented to and considered by the trial judge will then be able to examine the transcript and make its determination. To permit "issues" to be presented orally would encourage parties to request that a court reporter record summary judgment hearings, a practice neither necessary nor appropriate to the purposes of such a hearing. *Richards v. Allen*, 402 S.W.2d 158, 161 (Tex.1966); rule 166–A(c).

If the issues are to be further restricted or expanded by the parties beyond those "expressly presented" by the written motion, the answer to the motion, or any other written response, the change must meet the requirements of rule 11 which provides:

> No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as a part of the record, *or unless it be made in open court and entered of record.* (emphasis added)

The City of Houston contends that the parties orally agreed in open court at the hearing on the motion to narrow the issue to a single question of law—does Clear Creek have standing under the code to sue for pollution originating outside its territorial boundaries? The City further maintains that if that agreement must comply with rule 11, the recitations in the judgment satisfy the requirements of the rule.

■ We agree that the parties in open court should be able to narrow the issues presented to the trial court provided the agreement is reduced to writing, signed, and filed with papers or "entered of record." If a party represents to the court that he waives a ground or objection that he has previously asserted in a written motion or response and agrees that a certain issue is the only issue before the court, rule 11 is satisfied if the oral waiver or agreement made in open court is described in the judgment or an order of the court. Rule 11 expressly approves this procedure.

■ The trial court's judgment[4] reflects that the parties by agreement expressly presented only one issue to the court, and the requirements of rule 11 were met when the agreement was reflected in the judgment. Counsel for the City announced in open court that he was withdrawing grounds 1 and 3 of its motion for summary

4. See note 2, *supra.*

judgment. Clear Creek agreed to withdraw its common law cause of action, and the City of Houston agreed not to object to its revival if the case were remanded for a new trial. The only issue then remaining to be determined at the hearing on the motion for summary judgment, taking into consideration the motion, the written response, and the open-court representations of counsel recited in the judgment, was the second ground asserted by the City's motion—the standing of Clear Creek to file a suit under the Texas Water Code for violations which occur upstream and *outside* the jurisdictional boundaries of the Clear Creek Basin Authority. No other issues were presented to the trial court by either party, and he ruled on no others.

Clear Creek next argues that its pleadings on file in the case adequately assert its claim of violations by the four plants located within its territorial boundaries, that its response to the City's motion for summary judgment does not supercede Clear Creek's previous pleadings, and that it should not have to replead in its response to the motion what it had already pled.

■ Pleadings do not constitute summary judgment proof. *Hidalgo v. Sur. Sav. & Loan Ass'n*, 462 S.W.2d 540 (Tex.1971). The new rule requires that contentions be expressly presented in the written motion or in a written answer or response to the motion, and pleadings are not to be considered in determining whether fact issues are expressly presented in summary judgment motions. The terms "answer" and "response" as used in the context of the rule clearly refer to the motion and not to the pleadings generally. *Feller v. Southwestern Bell Tel. Co., supra.* To hold otherwise would be to perpetuate the evil the rule change was designed to eliminate. The written answer or response to the motion must fairly apprise the movant and the court of the issues the non-movant contends should defeat the motion.

■ We are not to be understood, however, as shifting the burden of proof that exists in summary judgment proceedings. The trial court may not grant a summary judgment by default for lack of an answer or response to the motion by the non-movant when the movant's summary judgment proof is legally insufficient.[5] The movant still must establish his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law. *See Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). Summary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right.

■ While it would be prudent and helpful to the trial court for the non-movant always to file an answer or response, the non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient *as a matter of law* to support summary judgment. The non-movant, however, may not raise any *other* issues as grounds for reversal. Under the new rule, the non-movant may not urge on appeal as reason for reversal of the summary judgment any and every *new* ground that he can think of, nor can he resurrect grounds that he abandoned at the hearing.

■ With the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, the non-movant must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement, such as those set out in rules 93 and 94, and he must present summary judgment proof when necessary to establish a fact issue. No longer must the movant negate all possible issues of law and fact that *could* be raised by the non-movant in

5. The function of the summary judgment is not to deprive a litigant of his right to trial by jury, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

the trial court but were not. *See, e. g.,* *"Moore" Burger Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 (Tex.1972); *Doyle v. USAA,* 482 S.W.2d 849 (Tex.1972); *Hidalgo v. Sur. Sav. & Loan Ass'n,* 462 S.W.2d 540 (Tex.1971); *Womack v. Allstate Ins. Co.,* 156 Tex. 467, 296 S.W.2d 233 (1957). In cases such as *Torres v. Western Cas. & Sur. Co.,* 457 S.W.2d 50 (Tex.1970) (existence of good cause for late filing of worker's compensation claim), and *Gardner v. Martin,* 162 Tex. 156, 345 S.W.2d 274 (1961) (failure of movant to attach certified copies of prior case to establish res judicata), the non-movant must now, in a written answer or response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal.

Having held that Clear Creek is not entitled to defeat the summary judgment by raising a fact issue for the first time on appeal which was not expressly presented to the trial court, we now determine if the City of Houston is entitled to its summary judgment as a matter of law for the reason asserted in its motion. Specifically, the question is whether under the Texas Water Code, Clear Creek Basin Authority can sue to enforce the Code provisions prohibiting unauthorized discharges of polluting waste into the waters of the state when those discharges occur upstream and *outside* the territorial jurisdiction of the Clear Creek Basin Authority. As we have said, this issue was the only question before the trial court.

Clear Creek insists that it is authorized to bring this suit under Tex.Water Code Ann. § 26.124 (Vernon 1972):

§ 26.124. Enforcement by Others

(a) Whenever it appears that *a violation or threat of violation* of any provision of Section 26.121 of this code or any rule, permit, or order of the department *has occurred or is occurring within the jurisdiction of a local government, exclusive of its extraterritorial jurisdiction,* the local government, in the same manner as the department, may have a suit institut-

ed in a district court through its own attorney for the injunctive relief or civil penalties or both, as authorized in Subsection (a) of Section 26.123 of this code, against the person who committed or is committing or threatening to commit the violation. This power may not be exercised by a local government unless its governing body adopts a resolution authorizing the exercise of the power. In a suit brought by a local government under this section, the department is a necessary and indispensable party. (emphasis added)

Section 26.121, prohibiting unauthorized discharges of waste, provides:

§ 26.121. Unauthorized Discharges Prohibited

(a) Except as authorized by a rule, permit, or order issued by the department, no person may:

(1) *discharge* sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into or adjacent to any water in the state;

(2) *discharge* other waste into or adjacent to any water in the state which, in itself or in conjunction with any other discharge or activity causes, continues to cause, or will cause pollution of any of the water in the state; or

(3) *commit any other act or engage in any other activity* which in itself or in conjunction with any other discharge or activity causes, continues to cause, or will cause pollution of any of the water in the state, unless the activity is under the jurisdiction of the Parks and Wildlife Department, the General Land Office, or the Railroad Commission of Texas, in which case this subdivision does not apply.

(b) In the enforcement of Subdivisions (2) and (3) of Subsection (a) of this section, consideration shall be given to the state of existing technology, economic feasibility, and the water quality needs of the water that might be affected.

(c) No person may cause, suffer, allow, or permit *the discharge* of any waste or the performance of any activity in viola-

tion of this chapter or of any rule, permit, or order of the department.

(d) Except as authorized by a rule, permit, or order issued by the department, no person may *discharge* any pollutant, sewage, municipal waste, recreational waste, agricultural waste, or industrial waste from any point source into any water in the state.

(e) No person may cause, suffer, allow, or permit *the discharge* from a point source of any waste or of any pollutant, or the performance or failure of any activity other than a discharge, in violation of this chapter or of any rule, regulation, permit, or other order of the board. (emphasis added)

Clear Creek contends that the plain meaning of the language of subsections (a)(2) and (3) of § 26.121, containing the phrase "or will cause pollution," and of subsection (e), is that a violation takes place where pollution is caused not where waste water or sewage enters the stream. It further argues that under section 1.002 of the Water Code and art. 5429b–2, § 3.03, in construing the Water Code, the object of the code must be considered. Clear Creek says the object indicated in § 26.012 is the development of a general, comprehensive plan for the control of water quality in the state, and that objective can best be implemented by construing the statute to allow all downstream victims of upstream polluters to protect their rights by maintaining suits under chapter 26 of the code. Clear Creek urges that such suits are proper without regard to where the pollutant enters state waters so long as the local government can show that the defendant caused the resulting pollution.

 The "discharge" of waste is prohibited in § 26.121, the *occurrence* of which *constitutes a "violation"* under § 26.124. The term "discharge" is defined in § 26.-001(20):

"To discharge" includes to deposit, conduct, drain, emit, throw, run, allow to seep or otherwise release or dispose of, or to allow, permit, or suffer any of these *acts or omissions.* (emphasis added)

Thus, "discharge" is defined as the equivalent of an "act or omission," which must "occur." An "act" is not a continuous process existing indefinitely, but an event that can be traced to a particular place and a particular time or time period. "Discharge" is not a process that continues on to the sea but an "act," and "an act can only occur where it actually takes place." *City of Friendswood v. Clear Creek Basin Auth.,* 545 S.W.2d 201, 205 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n. r. e.). Nor does the language of (a)(3) expand the term "discharge" to acts or activities occurring outside the territorial limits of the occurrence of those acts or activities. The phrase "other act or . . . other activity" in (a)(3), when read together with (a)(1) and (2), constitutes a "Mother Hubbard" or catch-all phrase designed to prohibit those acts or activities that may not literally come within the definition of "discharge" but which cause pollution. The context of the language of (a)(3) demonstrates it was not intended to expand the word "occur" but rather to make sure that no act or activity which causes pollution was excluded by using the term "discharge." It is abundantly clear from the Code that the violation "occurs" at the time and place where the discharge "occurs." Accordingly, we hold that a local government may not bring a statutory action for civil penalties and injunctive relief pursuant to § 26.124 of the Texas Water Code for discharges that occur outside its geographical boundaries.

Our reading of legislative intent is reinforced by comparing *in pari materia* other sections of chapter 26. The general authority for administering and enforcing the act is vested in the Department of Water Resources. Section 26.011 provides "[e]xcept as otherwise specifically provided, the department shall administer the provisions of this chapter [26] and shall establish the level of quality to be maintained in, and shall control the quality of, the water in this state as provided by this chapter. . ." Sections 26.171 through 26.174, relating to the authority of a local government to inspect public waters, to recommend water

quality standards to the Texas Department of Water Resources, to enter property, and to bring an enforcement action, are expressly limited to the territorial jurisdiction of that particular local government. Section 26.175 provides that a local government may execute cooperative agreements with the department or other local governments, and these local governments may be assigned and delegated "the pertinent powers and functions vested in the department under this chapter as in the judgment of the executive director [of the department] may be necessary or helpful to the local government in performing those management, inspection, and enforcement functions." The general authority for the civil enforcement of the statute is given by § 26.123 to the Department of Water Resources, while § 26.124, granting enforcement power to local governments, limits enforcement to violations occurring "within the jurisdiction of a local government, exclusive of its extraterritorial jurisdiction." It seems evident that the legislature sought to vest overall statewide authority for the act in the Texas Department of Water Resources with concurrent authority for local governments to act only within their boundaries, thus eliminating duplication, overlapping, and even conflict between local governments in their efforts. The statute attempts to establish an orderly plan of enforcement with the department at its summit.

This legislative scheme is further demonstrated by the history of § 26.124 authorizing local governments to bring enforcement suits. The forerunner of § 26.124 authorized suit "if the violation of such section causes or would cause a condition of pollution in any of the waters in its boundaries." 1967 Tex.Gen.Laws, ch. 313, § 16(c), at 756. Two years later in 1969, however, the legislature amended that section to its present form, limiting suits by local governments to a violation that "has occurred or is occurring within the jurisdiction of a local government, exclusive of its extraterritorial jurisdiction . . . ." 1969 Tex.Gen. Laws, ch. 760, § 4.03(a), at 2247. The use of the last phrase, "exclusive of its extraterri-

torial jurisdiction," is but a further indication that specific geographical limitations were intended. Similarly, the 1967 act had no specific territorial restrictions on the right of a local government to enter public and private property to make inspections and investigations of conditions relating to water quality. 1967 Laws, *supra* § 16(b), at 756. The 1969 legislature by amendment limited this right to "property within its territorial jurisdiction." 1969 Laws, *supra* § 5.03, at 2249. It is apparent that in amending the statute, the legislature intended some change in the existing law, and this court will endeavor to effect the change. *See American Surety Co. v. Axtell Co.*, 120 Tex. 166, 36 S.W.2d 715, 719 (1931).

The judgment of the court of civil appeals is reversed, and the judgment of the trial court is affirmed.