**RADX CORPORATION, Appellant,**

v.

**Nicholas A. DEMY, M.D., et al., Appellees.**

**No. 01–82–0951–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 15, 1983.

Rehearing Denied Oct. 13, 1983.

M. Stephen Guynes, Houston, for appellant.

Larry Huelbig, Houston, for appellees.

Before BASS, SMITH and COHEN, JJ.

## OPINION

BASS, Justice.

This is an appeal from a summary judgment awarding appellees $28,492.04 in accrued minimum royalties pursuant to a licensing agreement.

Appellees, Nicholas A. Demy, M.D., and Kenneth G. Catlin, secured a patent for a cassette unloading and reloading machine called the "Load-a-Mat." Appellees, as licensors, entered into a license agreement with appellant, Radx Corporation, as licensee. Radx was granted the exclusive right to use, sell, lease, and rent Load-a-Mat's for the life of the patent, unless such right was earlier terminated in accordance with the provisions of the agreement.

The agreement in pertinent part provided as follows:

(5) Licensee agrees to pay to Licensors a royalty upon all sales of licensed products at the rate of 5% on the gross sales price of all units covered by the claims of such licensed patent. [There follows a definition of "sales" and "gross sales price."]

(6) Licensee shall pay Licensors an annual minimum royalty payable upon the first day of the second month of the

following calendar year with the first payment due on February 1, 1972, as follows:

a. For the first year of this agreement which shall be deemed to extend from the date of execution hereof through December 31, 1971, Licensee hereby agrees to pay Licensors a minimum royalty of $5,000.

b. For the calendar year ending December 31, 1972, Licensee shall pay Licensors a minimum royalty of $10,000.

c. For the calendar year ending December 31, 1973, Licensee shall pay Licensors a minimum royalty of $15,000.

d. For each calendar year for the remaining term of this agreement, Licensee shall pay Licensors a minimum royalty of $15,000.

Failure of Licensee to pay accrued royalties or accrued minimum royalties for any given calendar year will cause this license to terminate automatically upon the last day of said calendar year provided Licensors give thirty days notice in writing of such failure and providing Licensee does not comply with the default paragraph hereinbelow, or unless is otherwise agreed upon by the parties in writing. If this agreement so terminates, Licensee shall have the opportunity to dispose of equipment then manufactured or partially manufactured with the payment of appropriate royalties.

(15) If either party defaults in any provision hereof then the offended party shall notify the defaulting party within thirty days after the discovery of such default and the defaulting party shall have thirty days from such date to correct such default to the satisfaction of the offended party.

(16) Failure to correct such default within the time periods specified herein shall automatically terminate such agreement provided such termination and reasons for termination are provided in writing to the offending party.

On September 25, 1978, appellees filed suit against appellant for breach of the license agreement, alleging that appellant owed royalties for the years 1975 and 1976, in the amount of $28,492.04, which appellant had refused to pay after written demand. On July 9, 1982, appellees filed their first amended motion for summary judgment.

By interlocutory judgment the trial court granted summary judgment in favor of appellees, as it found that no issue of material fact existed, and that appellees were entitled to judgment as a matter of law. Final judgment was rendered November 17, 1982.

Appellant raises two points of error on appeal. In its first point, appellant contends that the trial court erred in rendering summary judgment for appellees, since as a matter of law the agreement is ambiguous and there exist genuine issues of material fact with respect to the intention of the parties.

Appellant argues that, based on case precedent and the language of the agreement, paragraph 6 gave it the option to either pay the accrued minimum royalties in order to keep the relationship alive or to automatically terminate the agreement by simply not paying them. Appellant relies upon construction of "unless" type oil and gas lease delay rental clauses to support its interpretation that the import of paragraph 6 was to provide for automatic termination with no concomitant obligation to pay minimum royalties which had accrued as of the date of the default, and cites *Kiggins v. Kennon*, 197 S.W.2d 182 (Tex.Civ.App.—Galveston 1946, writ ref'd n.r.e.), and *Major v. Ford*, 357 S.W.2d 820 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.), as authority.

Appellant further contends that paragraph 6, the specific provision dealing with payment of royalties, controls over the more general provisions of paragraphs 15 and 16 (dealing with default in general). It argues that to interpret the agreement to require notice of termination before the contract can be deemed terminated (pursuant to paragraph

16) renders the words "automatic termination" in paragraph 6 meaningless.

Appellant concludes that as the language of the agreement is ambiguous, and as it has demonstrated a reasonable construction which does not require payment of the minimum royalties in question, the parties' intent is at issue, and summary judgment was improperly granted.

Appellees respond that the trial court was required to look only to the terms of the license agreement in determining whether any material term was ambiguous, that the license agreement was not ambiguous, and that by the clear terms of the license agreement, it could not properly be deemed terminated until three conditions had been met: (1) default by appellant; (2) notice of default by appellees; (3) failure of appellant to timely cure. Appellees urge that termination of the license agreement, when it did occur, did not extinguish appellant's obligation to pay accrued annual minimum royalties. Appellees point out that the agreement by its terms only terminates the license, not monetary obligations incurred under the agreement, and they argue that "accrued" implies an "outstanding and increasing" obligation.

▪ It is a question of law for the court whether or not a contract is ambiguous. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968). The primary concern is to ascertain and give effect to the intentions of the parties as expressed in the instrument. *Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003 (1941). To this end, courts examine and consider the entire instrument in such a manner that none of the provisions will be rendered meaningless. *Steeger v. Beard Drilling, Inc.*, 371 S.W.2d 684 (Tex.1963). If the instrument is so worded that a court may properly give it a certain or definite legal meaning or interpretation, it is not ambiguous. A contract *is* ambiguous, however, when application of rules of interpretation to the instrument leave it genuinely uncertain which of two meanings is proper. When it is thus reasonably susceptible to more than one mean-

ing, extraneous evidence is admissible to determine the true meaning of the instrument. Summary judgment in such a case is improper, as the question of the true meaning of the contract becomes one of fact for the jury. *Amistad Inc. v. Frates Communities, Inc.*, 611 S.W.2d 121 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.); *Thompson v. Hambrick*, 508 S.W.2d 949 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.).

▪ It appears from the wording of paragraph 6 of the agreement that although the term "automatic termination" is used, three conditions must be met for termination to become effective: (1) failure to pay accrued royalties or accrued minimum royalties; (2) notice of default; (3) failure to cure such default within thirty days of notice. The contract only terminates "automatically" upon this failure to cure, and not before.

This interpretation of the conditions which must be met to constitute termination is the only reasonable one in light of the necessary and accepted meaning of the word "provided." As this court stated in *Kiggins v. Kennon*, 197 S.W.2d 182 (Tex. Civ.App.—Galveston 1946, writ ref'd n.r.e.), "the word 'provided' ... naturally expresses a qualification, limitation, condition, or exception respecting the scope and operation of the words previously used." There is nothing in the instant agreement to suggest that the conditions of notice and failure to cure were not placed in the contract clause in question to qualify and limit the meaning of the term "automatic termination." Contrary to appellant's contention, "automatic termination" is not thereby rendered meaningless (although it takes on a meaning other than that attributed to it by appellant).

▪ Furthermore, appellant's interpretation that, just as in delay rental clauses, the failure to pay the accrued minimum royalties in the case at bar simply acts as a forfeiture of the license, and does not entail liability for the accrued but unpaid minimum royalty, is untenable. First, the prior four subparagraphs of paragraph 6 state

that appellant "shall pay ... a minimum royalty." These mandatory terms are not conditioned upon the failure to maintain certain *minimum* yearly sales, nor is the requirement of payment of accrued minimum royalties couched in terms of merely "preserving and keeping this contract in force." See, by contrast, *Kiggins, supra.* More importantly, if appellant's interpretation were correct, it would also be relieved of any obligation to pay accrued royalties on actual sales, since the termination procedure applies both to failure to pay accrued royalties *and* to failure to pay accrued annual minimum royalties. Yet, appellant concedes liability for accrued royalties on actual sales.

The only reasonable construction to be given the royalty provisions is that default does not relieve appellant of liability for *any* royalties accrued as of the date of termination of the agreement. The contract appears to be capable of a "certain or definite legal meaning", and the clause in question, in light of an examination of the entire instrument, does not appear to be "genuinely uncertain" as to which of two meanings is proper. The agreement, therefore, is not ambiguous.

The question then becomes, when was the agreement terminated? Appellant, in its second point of error, contends that even if, as a matter of law, it was obligated to pay the minimum royalties which had accrued for 1975, it was improper for the trial court to have held that as a matter of law appellant was obligated for minimum royalties for 1976. Appellant argues, in support of its position, that the agreement was effectively terminated December 31, 1975, since accrued minimum royalties were not paid for 1975, notice of non-payment was sent by letter dated February 17, 1976, and the default paragraph was not complied with. Therefore, liability for 1976 could not have been incurred.

Appellees respond that as appellant did not timely and properly present the issue of notice dated February 17, 1976, such issue cannot be considered on appeal as grounds for reversal. Rule 166–A Tex.R.Civ.P.Ann.

(Vernon 1982). As they point out, in appellant's response appellant argued that it was not liable for accrued minimum royalties simply by virtue of its failure to pay the 1975 accrued minimum royalty. Appellant based its contention on its interpretation of the contract term "automatic termination." Nowhere in its response did appellant argue that it was not liable for accrued minimum royalties. Pursuant to paragraph 6, after failure to pay it received notice of default dated February 17, 1976, thus refuting appellees' contention that notice was effective by letter dated June 10, 1977.

While it is true that the non-movant need not answer or respond to a motion for summary judgment in order to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient, as a matter of law, to support the summary judgment, the non-movant must expressly present to the trial court summary judgment proof when necessary to establish a fact issue. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). The non-movant cannot defeat the summary judgment by raising a fact issue for the first time on appeal which was not expressly presented to the trial court. Id. at 679. The amended version of Rule 166–A requires that these contentions must be expressly presented in a written answer or response to the motion, which "fully apprises" the court of the issues the non-movant contends should defeat the motion. Id. at 678.

In light of the commentary on the purposes behind the revision of Rule 166–A, and case law interpretation of the meaning of the phrase "issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal," it appears that appellant did not "expressly present" its objections to the motion for summary judgment. Therefore, the particular basis for its contention on appeal, namely, that default, *notice of non-payment dated February 17, 1976,* and failure to cure, caused "automatic termination" of the license agreement as of December 31, 1975,

cannot be considered by this court as grounds for reversal.

Appellees presented summary judgment proof of the execution of the license agreement, failure of appellant to pay accrued minimum royalties for 1975 and 1976, notice of termination for non-payment dated June 10, 1977, failure to cure default, and amount due under the agreement after credit for payment of royalties for actual sales. This evidence was legally sufficient to support the summary judgment, in that appellees presented and conclusively proved all of the essential elements of their cause of action as a matter of law. See *City of Houston v. Clear Creek Basin Authority, supra,* Tex.R.Civ.P. 166–A(c).

Appellees having established their right as a matter of law to summary judgment, appellant, at *that* point, was required to expressly present to the trial court any reasons seeking to *avoid* appellees' entitlement to judgment. In other words, appellant was required, after appellees had proved a prima facie case, to present issues which would defeat appellees' entitlement, or to present to the trial court any alleged defect in the appellees' proof. See *Clear Creek, supra.*

Because appellant did not raise the issue of the notice dated February 17, 1976, to the trial court, the court did not abuse its discretion in rendering summary judgment in favor of appellees. The trial court correctly found that there was no genuine issue as to any material fact, and that the moving party was entitled to judgment as a matter of law. Rule 166–A Tex.R.Civ.P. Ann. (Vernon 1982).

Appellant's two points of error are overruled.

The judgment of the trial court is affirmed.