Opinion issued June 9, 2005






 














In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00044-CV




COMPLETE CARE SERVICES, L.P., Appellant

V.

ETHEL HOLT, INDEPENDENT EXECUTRIX OF THE PERSON AND
THE ESTATE OF JOSEPH THOMAS HOLT, AND ON BEHALF OF AND
FOR THE BENEFIT OF ALL PARTIES ENTITLED TO BRING AN
ACTION FOR THE DAMAGES CAUSED TO JOSEPH THOMAS HOLT,
Appellee




On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Cause No. 18084




MEMORANDUM OPINION
          This is an appeal from a summary judgment rendered in favor of appellee, Ethel
Holt. The case began as an action to recover wrongful death and survival damages
on appellees’ behalf for the injuries and death of Joseph Holt against Senior Living
Properties, L.L.C. (“SLP”) and its third-party manager, appellant, Complete Care
Services, L.P. (“CCS”).


 On appeal, the issues are whether the trial court erred in (1)
granting summary judgment for appellee on a claim not alleged in her pleading; (2)
granting a second summary judgment against CCS for breach of the same contract;
(3) holding CCS jointly and severally liable for SLP’s share of the uninsured portion
of the settlement; and (4) ignoring summary judgment evidence. We reverse and
remand. 
BACKGROUND
          After her husband, Joseph Holt, died while a resident of Anahuac Healthcare
Center nursing home, Ethel Holt, as executrix of her husband’s estate, sued SLP, the
owner of the nursing home, and CCS, the company that managed the nursing home. 
SLP was an additional insured under CCS’s liability insurance policy, which
consisted of a self-insured retention (“SIR”) of $500,000 per occurrence. Admiral
Insurance Company (“Admiral”) provided the first layer of liability coverage above
the SIR for both CCS and SLP in the amount of $1,000,000 per occurrence. Admiral
was not obligated to contribute to the settlement of a case until the insureds satisfied
the SIR. 
          On February 25, 2002, the parties signed a settlement agreement (“the
Agreement”) after mediation. CCS and SLP settled their part of the controversy for
$1,000,000.


 Admiral agreed to pay $750,000 of the total sum of the settlement.


 
However, CCS and SLP could not immediately agree on what percentage of the
remaining $250,000 balance for which each would be responsible. CCS and SLP
agreed to submit to binding arbitration the question of what percentage of the balance
of the Agreement each company would be required to pay. They agreed that the
arbitration must take place within 14 days of signing the Agreement in order for the
amounts owed by each to be determined by the time the funds were due to be paid to
appellee. According to the Agreement, if the arbitration did not occur within 14 days,
CCS and SLP would each pay 50 % of the $250,000 balance to appellee. The
Agreement states
Of the above sums from Senior Living Properties and
Complete Care Services, $750,000 shall be paid by
Admiral Insurance Company with the remainder to be paid
between said parties through binding arbitration before
Alan F. Levin within 14 days. For the purposes of this
settlement agreement, SLP & CCS are deemed to owe the
$250,000 SIR money 50/50.
          Admiral timely paid its $750,000 portion. But when appellee filed a First
Supplemental Petition against CCS and SLP on April 2, 2002, CCS had only paid
$75,000, while SLP had not made any payment to appellee. In her First Supplemental
Petition, appellee alleged in count one that both CCS and SLP had breached the
Agreement and sought a declaratory judgment to that effect. In count two, appellee
alleged CCS and SLP had fraudulently induced appellee to enter into the Agreement. 
Appellee moved for summary judgment against CCS and SLP on count one, and she
sought to have the first count against CCS and SLP severed into separate actions.
          On October 4, 2002, the trial court granted appellee’s summary judgment on
count one and severed her claims. In this final judgment, the court (1) entered
judgment against CCS for $125,000, but also declared that $75,000 of that amount
had already been satisfied by CCS’s partial payment; (2) severed the breach of
contract judgment against CCS from the remaining claims and assigned this severed
breach of contract action against CCS the cause number 18084-B; (3) severed the
breach of contract claim against SLP and assigned this severed breach of contract
action against SLP the cause number 18084-C; and (4) did not render judgment on
appellee’s fraudulent inducement claim against CCS and SLP.


 
          On December 16, 2002, pursuant to the final judgment, CCS paid the
remaining $50,000 principal that it owed appellee according to the terms of the
Agreement, thereby combining for a total of $125,000 that CCS had paid to appellee. 
At that time, SLP had not yet paid any money to appellee. On February 25, 2003,
appellee filed a Second Supplemental Petition in which she “requested the Settlement
Agreement, dated February 25, 2002, be declared ambiguous.” Appellee filed a
second motion for summary judgment against CCS, claiming CCS owed appellee the
remaining $125,000 because CCS had undertaken a joint and several obligation in the
Agreement. At a hearing on March 4, 2003, the trial court found CCS and SLP
jointly and severally liable, but did not conclude that the Agreement was ambiguous. 
CCS objected that appellee never pleaded for joint and several liability, and without
pleading it, appellee could not assert it as a ground for summary judgment. On
December 12, 2003, the trial court overruled CCS’s objection regarding appellee’s
failure to plead joint and several liability and found the Agreement unambiguous that
CCS and SLP are jointly and severally liable for the remaining $125,000 portion of
the settlement.


 The court entered a final summary judgment for appellee and ordered
CCS to pay, “in addition to all sums previously paid to this date, the further aggregate
sum of ONE HUNDRED TWENTY FIVE THOUSAND DOLLARS ($125,000.00).”
(emphasis in original). This appeal followed. 
DISCUSSIONIn reviewing a summary judgment, an appellate court must consider whether
the successful movant at the trial level carried its burden of showing that there was
no genuine issue of material fact and that judgment should be rendered as a matter of
law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin.
Corp., 988 S.W.2d 746, 748 (Tex. 1999). We assume all the non-movant’s evidence
is true and indulge every reasonable inference in favor of the non-movant. Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). If the movant can
show it is entitled to judgment as a matter of law, the burden shifts to the non-movant
to present evidence raising a fact issue to defeat the motion for summary judgment. 
Haight v. Savoy Apartments, 814 S.W.2d 849, 851 (Tex. App.—Houston [1st Dist.]
1991, writ denied). When the trial court’s order does not specify the grounds on
which a motion for summary judgment was granted, we will affirm the summary
judgment if any of the theories advanced in the motion are meritorious. See
Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996).
          Appellant contends that the Agreement signed February 25, 2002,
unambiguously provided that CCS and SLP were each responsible for only 50 % of
the $250,000 portion of the settlement with appellee. By contrast, appellee contends
that the Agreement makes CCS jointly and severally liable with SLP for all $250,000
because the first sentence of the Agreement states, “Plaintiffs to receive from
Defendants in full settlement hereof the sum of $1,215,000.00 payable: Senior Living
Properties and Complete Care Services: $1,000,000.00.” (C.R. 224). Appellee argues
that this phrase is unambiguous in creating a joint and several obligation on the part
of CCS to pay all $1,000,000, if need be. Appellee argues that the sentence found
later in the Agreement that provides that “[f]or the purposes of this settlement
agreement, SLP & CCS are deemed to owe the $250,000 SIR money 50/50,” is
merely an agreement between CCS and SLP as to how they would fund the
settlement. 
          A settlement agreement is a contract. ASI Techs., Inc. v. Johnson Equip. Co.,
75 S.W.3d 545, 547 (Tex. App.—San Antonio 2002, pet. denied). Therefore,
construction of a contract is governed by legal principles applicable to contracts
generally. Id. An unambiguous contract is to be construed by a court as a matter of
law. Heritage Res., Inc. v. Nationsbank, 939 S.W.2d 118, 121 (Tex. 1996). A
contract is ambiguous when its meaning is uncertain and doubtful or is reasonably
susceptible to more than one interpretation. Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983). The mere fact that the parties disagree about the meaning of a contract
does not make an otherwise straightforward contract ambiguous. Transcon. Gas
Pipeline Corp. v. Texaco, Inc., 35 S.W.3d 658, 665 ( Tex. App.—Houston [1st Dist.]
2000, pet. denied). An ambiguity does not arise just because the parties’ respective
interpretations are sharply conflicting. Columbia Gas Transmission Corp. v. New
Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996); Transcon. Gas Pipeline Corp., 35
S.W.3d at 665. On appeal, the trial court’s legal conclusions are always reviewable,
and we are not obligated to give any particular deference to those conclusions. 
Sifuentes v. Carrillo, 982 S.W.2d 500, 503 (Tex. App.—San Antonio 1998, pet.
denied). Rather, we are required to undertake an independent evaluation of the trial
court’s legal determinations. Id. We will not reverse a trial court’s legal conclusions
on appeal unless they are erroneous as a matter of law. Id.
          In construing an unambiguous contract, our task is to ascertain the parties’
intentions as expressed in the contract. Heritage Res. Inc., 939 S.W.2d at 121. To
achieve this goal, we examine the entire document and consider each part with every
other part so that the effect and meaning of one part on any other part may be
determined. Steeger v. Beard Drilling, Inc., 371 S.W.2d 684, 688 (Tex. 1963); Radx
Corp. v. Demy, 658 S.W.2d 298, 301 (Tex. App.—Houston [1st Dist.] 1983, no writ). 
We presume that the parties to a contract intend every clause to have some effect. 
Ogden v. Dickinson State Bank, 662 S.W.2d 330, 332 (Tex. 1983).
          We hold that the Agreement of February 25, 2002, is unambiguous. The
Agreement first set out the total amount of the settlement that appellee will receive:
$1,215,000. It then broke this number down into the $215,000 that appellee was to
receive from Pro-Touch Nurses and the $1,000,000 that appellee was to receive from
SLP and CCS. However, the Agreement did not end there, but discussed the
$1,000,000 portion in greater detail by providing (1) that $750,000 of that remaining
$1,000,000 was to come from Admiral and (2) a default arrangement for would pay
for the left over $250,000. In the absence of an agreement to the contrary, achieved
through binding arbitration within 14 days of when the Agreement was signed, the
default arrangement stated that CCS and SLP would each pay 50 % of that remaining
$250,000, or in other words, each would pay $125,000.
          The contract never expressly stated that CCS undertook a joint and several
obligation to pay the entire $1,000,000 or even $250,000 itself. Nor did the contract
implicitly create joint and several liability as it clearly stated that SLP and CCS “are
deemed to owe the $250,000 SIR money 50/50.” It is assumed that every clause is
intended to have some effect. Heritage Res. Inc., 939 S.W.2d at 121; Dickinson State
Bank, 662 S.W.2d at 332. In order to give effect to all terms of the contract, we
cannot construe this last sentence to do anything other than allocate CCS’s share of
the total settlement amount at $125,000, not more than 50% of the $250,000
remaining portion after payment by Admiral and Pro-Touch Nursing. 
CONCLUSION
          Because the trial court erred in granting summary judgment for appellee, we
reverse the trial court’s judgment and remand the cause for further proceedings.


 
Because we have held that summary judgment was improperly granted, we need not
address CCS’s remaining issues and decline to do so. 
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Hanks.