**LONE STAR GAS CO., A DIVISION OF ENSEARCH CORP., Appellant,**

v.

**G.S.G. ROYALTY CORP. & A.V.G. Exploration Inc., Appellees.**

No. 05–87–01142–CV.

Court of Appeals of Texas, Dallas.

Aug. 22, 1988.

Rehearing Denied Sept. 22, 1988.

D.L. Case, Jack Pew, Jr., Dallas, for appellant.

Lloyd Broussard, Austin, for appellees.

Before HOWELL, ROWE and BAKER, JJ.

HOWELL, Justice.

Appellant, Lone Star Gas Company, appeals from a summary judgment rendered in favor of plaintiff/appellees G.S.G. Royalty Corporation and A.V.G. Exploration, Inc. We agree with Lone Star's contentions that summary judgment was granted in error and sustain points one through five. The summary judgment of the trial court is reversed, and the cause is remanded to the trial court.

At the heart of this litigation is a gas purchase contract in which Lone Star is Buyer and appellees are Seller's assignees.[1] The contract was of the "take-or-pay" variety in which Buyer agreed to purchase *all* of the casinghead [2] gas "tendered" and 75% of the "delivery capacity" of Seller's gas wells. The delivery capacity of the gas wells was based initially on "deliverability tests" to be performed by either party under strict conditions in accordance with rules established by the regulatory body, the Texas Railroad Commission:

> Buyer's annual minimum purchase obligation under and pursuant to this contract is subject to Seller's delivery capacity and ability to deliver gas from the premises covered hereby in accordance with the terms of this contract and with state and federal laws and in compliance with the rules and regulations of the Texas Railroad Commission or such other regulatory body as may have jurisdiction thereof. Tests for the purpose of determining Seller's delivery capacity by actual measurement and calculation shall be conducted, at the instance or request of either Seller or Buyer, at intervals of approximately six (6) months or as often as either Seller or Buyer may deem necessary, and Seller's delivery capacity on each day during the period between the dates of any two consecutive tests shall be determined by the first of such tests provided that such tests shall be made only after a stabilized rate of flow for a twenty-four (24) hour period has been achieved by not less than seventy-two (72) hours' flow against a stabilized pressure maintained by Buyer as a normal operating pressure at the point of delivery.

The contract further provided that the tested delivery capacity of the wells would be reduced in the event that Seller was unable to deliver the tested delivery capacity amount:

> If during any day Seller cannot deliver a quantity of gas equal to the delivery capacity determined by the next preceding test, then such reduced quantity will

---

1. There is some dispute over the ownership of the wells. However, we do not reach Lone Star's ninth point of error regarding the lack of summary judgment evidence showing appellees' ownership of the wells. For the purposes of this opinion, we assume without deciding that appellees G.S.R. Royalty Corporation and A.V.G. Exploration are assignees of Seller's rights under the contract and reverse the judgment on other grounds.

2. Casinghead gas is produced as an incidental product from wells primarily producing oil.

be deemed a new test for the purpose for establishing Buyer's minimum purchase obligation.

Thus, the Buyer contracted to take or pay for 75% of the scientifically tested delivery capacity of each gas well until such time as Seller could not deliver this amount. This reduced capacity was treated under the contract as a new test, and Buyer became obligated to take or pay for 75% of the deemed test delivery capacity of the gas wells.

As for the casinghead gas provision of the contract, Buyer agreed under the following clause to purchase all casinghead gas tendered:

Buyer subject to the other terms and provisions hereof, shall take all casinghead gas tendered hereunder, if, as and when produced, and casinghead gas so taken by Buyer shall not serve to reduce Buyer's obligation to take or pay for the contract volume of gas well gas.

The standard for granting summary judgment is well established. Summary judgment was proper only if the summary judgment evidence indicated that there was no genuine issue of material fact and that the movant was entitled to judgment as a matter of law on the issues expressly set out in the motion. TEX.R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 676 (Tex.1979). Furthermore, any defects in the form of the affidavits are waived on appeal unless specifically pointed out by the opposing party. Rule 166a(e); *Dolenz v. A B*, 742 S.W.2d 82, 83-84 n. 2 (Tex.App.—Dallas 1987, writ den.). With these standards in mind, we address the points of error raised by Lone Star.

## THE "DELIVERY CAPACITY" ISSUES

In points two and three, Lone Star alleges that the trial court erred in granting appellees' motion for summary judgment because it was not established as a matter of law that Lone Star failed to take or pay for 75% of the delivery capacity of Seller's gas wells.

Appellees' summary judgment evidence showed that deliverability tests were per-formed on the wells at the inception of the contract term and that, according to the test data reported to the Railroad Commission, the gas wells were capable of delivering a given amount of gas and that Lone Star failed to take or pay for 75% of this amount of gas. Furthermore, appellees' proof tended to show that no additional deliverability tests had been *performed* by either party in accordance with the contract excerpt above quoted. Thus, reasoned appellees, Lone Star failed to perform its contractual obligations. Appellees' summary judgment material did not mention the "deemed test" provision of the contract allowing for reduction of the amount that Lone Star was obliged to take.

Lone Star's summary judgment response alleged that the "deemed test" provision had been invoked and that its minimum purchase obligations had been thereby reduced. On January 1, 1985, Lone Star requested delivery of 100% of Seller's capacity for the wells in question; Seller delivered 1100 mcf. On the very next day, with Lone Star still requesting 100% of production, Seller delivered 673 mcf. In this manner, argued Lone Star, the reduced delivery capacity fell to 496 mcf on January 12, to 384 mcf on January 13, and to 329 mcf on January 14, where it remained for the rest of 1985 and until September 12, 1986. On that date a new deliverability test was *performed* in accordance with the contract, and the revised delivery capacity stood at 1124 mcf. Such was the figure until November 10, 1986. On that date Lone Star requested delivery of 100% of capacity, and Seller delivered 946 mcf. This "deemed" tested capacity reduced Lone Star's minimum purchase obligation. With Lone Star's request for delivery of 100% of Seller's delivery capacity still in effect, Seller's delivery of the following amounts on the following dates reduced Lone Star's daily purchase obligation to 75% of: 902 mcf on November 12, 776 mcf on November 26, 757 mcf on December 6, 746 mcf on December 7, 709 mcf on December 8, 681 mcf on December 14, and 669 mcf on December 17. Lone Star compared its actual purchases with the minimum pur-

**460**

chase obligations under the deemed tests of delivery capacity and showed that the amount actually purchased during the life of the contract was far in excess of the minimum obligation.

We are of the opinion that the summary judgment was improperly entered on behalf of appellees. Appellees' proof totally ignored the deemed test clause of the contract and purported to set Lone Star's purchase obligation solely on the deliverability tests *performed.* Were we to apply appellees' theory of the contract, Lone Star would have been in breach of the contract (even though it requested 100% of production) on the days when production was diminished through no fault of Lone Star, to an amount far below the amount reflected in the performed test. Appellees have not shown their right to recover on the contract as a matter of law. At the very least, Lone Star has raised a fact issue as to whether it has fully performed its contractual obligations regarding the gas well gas.

#### THE "CASINGHEAD" GAS

The contract provided that Lone Star would purchase all casinghead gas tendered by Seller if, as, and when produced. Appellees' summary judgment proof consisted of Railroad Commission tests establishing that the oil wells were capable of producing casinghead gas in quantities far in excess of that amount actually purchased by Lone Star. Lone Star's responsive proof countered that appellees had made no showing of a *tender* of casinghead gas and that proof of delivery capacity was totally irrelevant. We agree with Lone Star. Appellees' proof of delivery capacity does not prove that Lone Star did not purchase gas actually *tendered* under the contract. Evidence of apples does not prove oranges. Appellees' summary judgment proof does not show their right to recovery as a matter of law under the casinghead gas provision of the take-or-pay contract.

Because there exist genuine issues of material fact to be resolved, the summary judgment rendered in favor of appellees, G.S.G. Royalty Corporation and A.V.G. Exploration, Inc., is reversed and the cause remanded to the trial court for further proceedings consistent with this opinion.