PDG GROUP INC. V. J. WLAKER HOLLAND

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-109-CV

PDG GROUP INCORPORATED, MARLIN APPELLANTS

AMUSEMENTS, L.P., AND DAVID DANIELS

V.

J. WALKER HOLLAND AND HOLLAND, APPELLEES

JOHNS, SCHWARTZ & PENNY, L.L.P.

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellants PDG Group Incorporated, Marlin Amusements, L.P., and David Daniels appeal from a summary judgment in favor of Appellees J. Walker Holland and the law firm of Holland, Johns, Schwartz & Penny, L.L.P. We affirm.

Background

This suit involves a dispute over family-owned businesses.  PDG, a closely held corporation that provides services to organizations raising funds through state-sanctioned bingo activities, is owned in equal shares by Daniels and his siblings, W. Parkinson, P. Greenfield, and G. Graham.  Daniels is PDG’s sole officer and director.  PDG is the general partner of Marlin.  Daniels and his siblings are Marlin’s limited partners.  Their mother, Geneva Parkinson, owns or controls interests in bingo locations providing PDG’s and Marlin’s income stream.  Beginning in 1988, Holland  provided legal services to PDG and Marlin. 

Daniels, PDG, and Marlin sued Holland and his law firm (referred to collectively as “Holland”), Daniels’s siblings (except G. Graham), Daniels’s mother, and others, alleging that Holland conspired with the other defendants to oust Daniels from his position at PDG and divest him of his stakes in PDG and Marlin by providing legal advice upon which the other defendants acted in agreeing upon and executing a plan of action to eliminate the income stream of PDG and Marlin.
(footnote: 2)  They also alleged that Holland breached his fiduciary duty to PDG and Marlin when he “repeatedly had conversations” with the other defendants about taking action to destroy, and conspired with them to take action to destroy, PDG and Marlin, all without Daniels’s knowledge or consent. 

Specifically, Appellants alleged that in January 2003, two of Daniels’s siblings, W. Parkinson and Greenfield, met with their mother and Daniels to discuss reorganizing the bingo facilities, and suggested at that meeting that Daniels relinquish his management functions at PDG and Marlin.  Daniels objected to any outside interference or management.  In March 2003, according to Appellants’ pleadings, Daniels’s mother retained Bob Schleizer to provide professional consulting services regarding her bingo facilities, and she, along with W. Parkinson and Greenfield, worked with Schleizer to remove Daniels from his management role with PDG and Marlin.  Appellants alleged that on or about April 10, 2003, Shleizer and Daniels’s mother and two siblings spoke with Holland about dissolving PDG and Marlin without Daniels’s knowledge or consent. 

Appellants further pleaded that after determining that W. Parkinson and Greenfield lacked the votes necessary to remove Daniels from the business, Schleizer informed Daniels that his mother wanted W. Parkinson to operate PDG and Marlin and that, if Daniels refused, she would take steps to dissolve those companies.  According to the petition, Daniels was locked out of the business premises of PDG and Marlin on June 6, 2003, based on instructions from Schleizer, and was thereafter denied access to the business operations.   Appellants alleged that for the next two months, Daniels and Schleizer engaged in negotiations for the purchase of Daniels’s interest in the businesses but that Schleizer ultimately informed Daniels that he would simply be removed from his position.  Appellants further alleged that when Daniels arrived at work on September 15, 2003, his mother, Schleizer, and his two siblings were interviewing prospective new managers for PDG and Marlin and that thereafter they engaged in a course of action to coerce clients away from PDG and Marlin, resulting in a substantial loss of revenue for the companies and loss of salary to Daniels.  

Holland filed a traditional motion for summary judgment on both the conspiracy and the breach of fiduciary duty claims, supported by two affidavits executed by him.  The trial court granted the motion and severed the claims against Holland from the claims against the other defendants.  This appeal followed.

Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co., 
73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

A summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678. 
 A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.
  IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004).
  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).

Summary judgment based upon the uncontroverted affidavit of an interested witness is proper if the evidence 
is clear, positive and direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted.  
Tex. R. Civ. P.
 166a(c); 
Trico Techs. Corp. v. Montiel,
 949 S.W.2d 308, 310 (Tex. 1997).  “Could have been readily controverted” does not mean that the affidavit could have been easily and conveniently rebutted but, rather, indicates that it could have been effectively countered by opposing affidavit.  
Trico Techs. Corp
., 949 S.W.2d at 310.    

Analysis

A major thrust of Appellants’ summary judgment response and brief on appeal is aimed at alleged inconsistencies and misstatements in Holland’s affidavits filed in support of his summary judgment motions.  Before turning to the merits of Holland’s motions, we will consider his affidavits.

In his affidavits, Holland first averred that, beginning in 1988, he had provided legal services to PDG, Marlin, and related Parkinson family entities.  He stated he had worked on specific business transactions and handled a few collection matters or lease disputes but that he had not acted as general counsel for any Parkinson family entity.  He had no knowledge of any dispute among the family members and did not have any discussions or communications with anyone in PDG or Marlin about the dissolution of those entities until July 15, 2003, when he received a phone call from defendant Schleizer, who “wanted to bring [Holland] up to speed on what all had been happening at PDG [] and Marlin [] during the prior several months.”  Holland stated that he met Schleizer for lunch on July 27, 2003.  Schleizer told Holland “in very general terms[] that [Schleizer] had been retained to consult with the family and advise them on restructuring the business,” and they had “a general discussion of what all had transpired during the immediately preceding three or four months and what [Schleizer] had discussed with the members of the Parkinson family about various alternate future plans for the companies.”  According to Holland’s affidavit, Schleizer did not mention dissolving PDG or Marlin or diverting their income.  

Holland further averred that after the July 27 meeting with Schleizer, he was contacted by Daniels as well as Daniels’s siblings and mother relating to the events of the previous few months.  According to Holland, “I advised that, because I had a conflict of interest, I could not provide advice with respect to [the familial dispute] . . . .  There was absolutely no discussion about the operations or management or income of PDG or Marlin [], or any other [] family entity.”  Nor did Holland discuss removing Daniels from the businesses with any family member.  

In response to Holland’s motion for summary judgment, Appellants pointed to several asserted misstatements, contradictions, and inconsistencies in Holland’s affidavit.  For example, Holland stated in his affidavit that Daniels’s sister, in her capacity as president of a family entity named “Bingo Data Management Services, Inc.,” contacted him in mid-2002 about dissolving that entity.  Appellants pointed out that Daniels’s sister was not the president of Bingo Data Management Services, Inc. and that the entity of that name was not a Daniels family business, and inferred that the conversation must have been about something else.  In response, Holland filed another affidavit in which he acknowledged that he incorrectly named the company in his original affidavit and that the correct name was “Bingo Data Services, Inc.”  He also attached to his affidavit the minutes of Bingo Data Services, Inc.’s organizational meeting, which identify Daniels’s sister as the company’s president.  We do not see how the correction of this mistake creates an inconsistency in Holland’s summary judgment evidence.

Likewise, Appellants contested Holland’s statement that his legal services were limited to corporate matters by producing the application to probate the will of a member of the Daniels family, which application was signed by Holland as attorney for Daniels’s mother.  But Holland’s affidavit did not state that he had never performed any legal services for individual members of the family.  We fail to see how the probate application renders Holland’s credibility suspect.

Appellants further highlighted alleged inconsistencies within Holland’s affidavit and between his affidavit and other documents.  For example, Appellants contend that Holland’s statement that, during his lunch with Schleizer, “[t]here was absolutely no discussion about . . . any future plans” is contradicted by the very next sentence in the affidavit, “There was simply a general discussion of what
 . . . [Schleizer] had discussed
 with [family members] about various alternate future plans . . . .”  [Emphasis added.]  Contrary to Appellants’ contention, it appears obvious that the second sentence describes Schleizer’s discussions with members of the family, not his discussions with Holland.  A plain reading of the affidavit—including those words omitted by Appellants—dispels the alleged inconsistency conjured by Appellants’ selective reading.

The other alleged inconsistencies identified by Appellants in Holland’s affidavit are in a similar vein.  We have considered them all and conclude that, like the example analyzed above, they are not inconsistencies at all.  Therefore, we hold that Holland’s affidavit was 
clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies
 and, therefore,  competent summary judgment proof.  
See
 
Tex. R. Civ. P.
 166a(c); 
Trico Techs. Corp., 
949 S.W.2d at 310.

Civil Conspiracy

A civil conspiracy is “a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.”  
Firestone Steel Prods. Co. v. Barajas
, 927 S.W.2d 608, 614 (Tex. 1996).  The essential elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.  
Operation Rescue-Nat’l v. Planned Parenthood
, 975 S.W.2d 546, 553 (Tex. 1998).

Holland’s motion for summary judgment alleged that there was no “meeting of the minds” because Holland was not aware of the events made the basis of Appellants’ claims against the other defendants until after those events 
transpired.  He also alleged that he had not committed any overt, unlawful act. 
 Holland’s affidavit conclusively established that the discussions among Holland, Schleizer, and others occurred sometime after the salient events made the basis of Appellants’ conspiracy claim and that Holland’s involvement in those meetings was limited to and consistent with his role as the from-time-to-time attorney for PDG and Marlin.  Appellants failed to controvert these assertions with summary judgment evidence of their own.  We therefore hold that Holland conclusively negated the meeting-of-minds and overt-unlawful-act elements of civil conspiracy and that the trial court did not err by granting summary judgment on that claim.  We overrule Appellants’ first issue.

Breach of Fiduciary Duty

The focus of a claim for breach of fiduciary duty is whether an attorney obtained an improper benefit from representing a client.  
Kimleco Petroleum, Inc. v. Morrison & Shelton,
 91 S.W.3d 921, 923 (Tex. App.—Fort Worth 2002, pet. denied).  “The essence of a breach of fiduciary duty involves the ‘integrity and fidelity’ of an attorney.”  
Id.
  “A breach of fiduciary duty occurs when an attorney benefits improperly from the attorney-client relationship by, among other things, subordinating his client’s interests to his own, retaining the client’s funds, using the client’s confidences improperly, taking advantage of the client’s trust, engaging in self-dealing, or making misrepresentations.”  
Id.

In the breach-of-fiduciary-duty section of their original petition, Appellants alleged that Holland

repeatedly had conversations with [Schleizer and Daniels’s mother and siblings] with respect to matters pertaining to the operation and dissolution of PDG and Marlin, all without the knowledge and/or consent of Daniels.  In doing so, [Holland] became co-conspirators in the agreement to take action to destroy PDG and Marlin, and such conduct constitutes a breach of the fiduciary duty that [Holland] had toward PDG and Marlin. 

Thus, Appellants alleged that Holland breached his fiduciary duty by improperly using Appellants’ confidences and by conspiring with the other defendants to Appellants’ detriment.
(footnote: 3)  We have already determined that Holland was entitled to summary judgment on Appellants’ conspiracy claim.  We will therefore focus our fiduciary-duty analysis on the improper-use-of-confidences aspect of Appellants’ claim.

Holland’s affidavit established the following:  he did not have any discussions before July 15, 2003, with anyone in PDG or Marlin about the dissolution of those entities; he had no knowledge of the dispute between Daniels and his family until July 15, when Schleizer called him “to bring [Holland] up to speed on what all had been happening” over the past few months; Holland met with Schleizer on July 27, and Schleizer told Holland about events that had already happened and about plans Schleizer had discussed with the family; members of the family thereafter called Holland to discuss the events of the previous months, but Holland told them that he could not advise any family member individually on those issues because he had a conflict of interest; and he did not discuss dissolution of PDG and Marlin or Daniels’s termination from those entities with any family member. 

Holland’s affidavit shows that the flow of information was 
to
 Holland from Schleizer and the family, not the other way around.  We hold that Holland’s affidavit was sufficient to refute as a matter of law Appellants’ allegation that he disclosed their confidences to Daniels’s family or otherwise improperly used that information.  The burden then shifted to Appellants to present the trial court with evidence of any issues that would preclude summary judgment; namely, with evidence that, contrary to his affidavit, Holland did disclose or improperly use Appellants’ confidential information.  
See Clear Creek Basin Auth.
, 589 S.W.2d at 678.  Appellants wholly failed to shoulder this burden.  Nothing in their summary judgment evidence raises a fact issue as to whether Holland disclosed or improperly used confidential information. 

We hold that Holland conclusively negated an essential element of Appellant’s breach-of-fiduciary-duty claim.  Thus, the trial court did not err by granting summary judgment on this claim, and we overrule Appellants’ second issue.

Conclusion

Having overruled both of Appellants’ issues, we affirm the judgment of the trial court.

ANNE GARDNER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DELIVERED: June 15, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
PDG, Marlin, and Daniels alleged identical claims against Holland.

3:
Appellants argue that other breaches of fiduciary duty, such as Holland’s failure to disclose conflicts to Appellants, may be inferred from their pleading. We disagree.  Appellants’ pleading is narrow and specific and alleges only those breaches of fiduciary duty we have identified.