**Opinion filed May 29, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00159-CV

_____

**VORTT EXPLORATION COMPANY, INC., Appellant**

**V.**

**EOG RESOURCES, INC.; JAN-LO OPERATING INC.;
DOUGLAS S. KING ASSOCIATED PERMIT AGENTS;
TAMMY CUPIT; SUPERIOR PETROLEUM COMPANY;
PHYLLIS JONES; AND DAVID RANDALL JONES, Appellees**

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C-41524**

## M E M O R A N D U M   O P I N I O N

Because the trial court correctly granted summary judgment that an oil and gas lease had terminated and because it correctly forfeited the bond that had been issued in connection with the issuance of a temporary restraining order, we affirm.[1]

---

[1]Although other parties are listed as Appellee, only EOG Resources, Inc., Phyllis Jones, and David Randall Jones are parties to this appeal.

Vortt Exploration Company, Inc. obtained an oil, gas, and mineral lease from Hugh Green and his wife, Wauneta. The lease was dated December 27, 1980, and covered property that is the subject of this lawsuit. The lease was for a primary term of two years "and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled [under the lease terms]." David Randall Jones and his wife Phyllis Jones purchased in two separate transactions 86.5 acres of the property covered by the lease.

The property became a part of the L.H. Green Unit II. A gas well was completed on property within the unit but adjacent to the property that Mr. and Mrs. Jones later purchased. That well is the subject of this lawsuit. No other wells were drilled in the unit. Production from the well began sometime in 1981. In November 2001, the gas purchaser quit taking the gas from the well and disconnected its pipeline. At the time of the hearing on a motion for summary judgment filed by Mr. and Mrs. Jones, the well had not been connected to any other pipeline.

On December 21, 2005, Almoth H. Green executed a permit allowing EOG Resources, Inc. to conduct geophysical operations across his property. Mr. and Mrs. Jones took the position that the 1980 lease had terminated by that time.

Vortt, however, did not believe that the lease had terminated; and it filed a lawsuit against EOG, Mr. and Mrs. Jones, and several other individuals and entities. Vortt sought a temporary restraining order, a temporary injunction, and a permanent injunction to prevent the proposed geophysical operations. It also sought a judgment for damages resulting from those operations as well as a declaration that Vortt held the only valid oil, gas, and other mineral lease upon the property covered by the well.[2]

The trial court granted Vortt a temporary restraining order and set the bond for the temporary restraining order at $10,000. Vortt made the bond.

EOG filed its answer to Vortt's claims and also filed a counterclaim in which it sought damages for the wrongful issuance of the temporary restraining order. It also sought attorney's fees.

On July 24, 2006, Mr. and Mrs. Jones answered Vortt's lawsuit, and they also filed a counterclaim against Vortt. As did EOG, Mr. and Mrs. Jones claimed damages for the wrongful issuance of the temporary restraining order. Additionally, they sought a declaratory judgment that

---

[2]A lease on this property was executed in 1989. Vortt received that lease by various assignments but did not assert any rights under that lease in the petition that it filed in this lawsuit.

the subject lease had expired by its own terms. Because they believed that the lease had expired and because Vortt remained in possession of the property, Mr. and Mrs. Jones also sought damages for breach of contract, fraud, and trespass. They also counterclaimed against Vortt for attorney's fees and exemplary damages. Mr. and Mrs. Jones sought no other relief from anyone.

Mr. and Mrs. Jones filed a traditional motion for summary judgment in which they claimed that the primary term of the 1980 lease had expired by its own terms. Even though Vortt sought no relief under the 1989 lease, Mr. and Mrs. Jones also claimed that the primary term of that lease had expired. The trial court entered its written order granting the motion for summary judgment on May 14, 2007, and held that there had been no production under either lease from December 2001 through the time of the filing of this lawsuit. The court further held that Vortt had not paid shut-in royalty as required by the 1980 lease. For those reasons, the trial court held that both leases had terminated by their own terms for nonproduction, and it awarded attorney's fees to Mr. and Mrs. Jones. The trial court also held that the temporary restraining order was wrongfully obtained, and it forfeited the bond to Mr. and Mrs. Jones and EOG as damages.

Vortt challenges the action of the trial court in multiple issues. It also raises three concerns about this court's jurisdiction.

Preliminarily, even though Vortt is the party that filed this appeal, it now claims that we cannot proceed with it. We formerly abated this appeal upon learning of a bankruptcy filing by Superior Petroleum. After a review of the proceedings, we, on our own motion, reinstated the appeal as to all parties other than Superior Petroleum. Vortt claims that there has been no compliance with TEX. R. APP. P. 8.3. That rule applies to reinstatement at the request of a party. We reinstated this appeal on our own motion. An appellate court has the inherent power to control its own docket. This preliminary argument is not well taken and is overruled.

Next, Vortt addresses the timeliness of its notice of appeal. Appellees make no argument on appeal that it was anything other than timely. This preliminary argument is also overruled.

Finally, Vortt argues that the orders granting judgment in this case are not final and that this court does not have jurisdiction in its own appeal.

When Vortt filed this appeal, we were concerned that the orders granting judgment in this case might not be final, and on July 11, 2007, we informed the parties and the trial court of our

3

concern. Afterward, we received a supplemental clerk's record, and that supplemental clerk's record contained, among other things, two orders: an order of severance regarding EOG and an order of severance pertaining to Mr. and Mrs. Jones. The order of severance regarding EOG was signed by the trial court on October 11, 2007, and the order of severance pertaining to Mr. and Mrs. Jones was signed by the trial court on October 25, 2007. In the EOG order of severance, the trial court made this handwritten notation: "The severed cause is now appealable." The Jones order of severance contains this typewritten statement: "The severed cause, for which an interlocutory appeal had been prosecuted by Plaintiff, is now final. The Clerk shall notify the Eleventh Court of Appeals, Eastland, Texas, of the severance, the new Cause Number and include a copy of this Order."

Generally, appellate review is confined to appeals of final judgments, unless otherwise authorized by statute. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) (in which it is stated that "the general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment"). When there is no conventional trial on the merits, a final judgment is one in which the trial court finally disposes of all claims and all parties. *Lehmann*, 39 S.W.3d at 205. A judgment is made final neither by the mere use of the word "final" nor by simply stating that the order is appealable. *Id.* The trial court must clearly indicate that it intended to dispose of the whole case. *Id.* An appellate court might find it necessary to review the record in order that it might determine whether a judgment is final. *Id.*

We believe that this record clearly shows that the trial court and everyone else intended that the orders granting judgment in this case were final and appealable judgments. This is particularly true in light of the fact that, when this court expressed its concern about finality, steps were taken that indicated that, in the minds of the trial court and the parties, final and appealable orders had been entered. The trial court clearly intended that the orders granting judgment were final because, after we had expressed our concern, it took specific steps to indicate by specific language that the orders granting judgment were final. Vortt clearly thought so because it appealed. EOG and Mr. and Mrs. Jones apparently considered the orders granting judgment to be final because they have raised no arguments otherwise. To the contrary, they express their belief on appeal that the orders granting judgment are final. All parties appear to have treated the orders granting judgment of the trial court as final, and after considering the record, we hold that to be the case. *See Lehmann*, 39 S.W.3d at

4

206 ("an order that all parties appear to have treated as final may be final despite some vagueness in [it]"). This preliminary assertion is also overruled.

In its first four stated issues, Vortt claims that the trial court erred when it granted the motion for summary judgment filed by Mr. and Mrs. Jones because (1) the force majeure clause excused any failure to produce the well; (2) the well was producing appropriately at applicable times; and (3) Mr. and Mrs. Jones did not properly notify Vortt that shut-in royalties were past due. Vortt also argues, in its fifth issue, that the trial court erred in granting the motion for summary judgment because there were fact issues concerning certain affirmative defenses that it raised. Finally, in its sixth issue, Vortt asks us to reverse the order granting judgment on its temporary restraining order bond, as well as the attorney's fees in favor of Mr. and Mrs. Jones, if we were to reverse the order granting summary judgment.

For traditional motions for summary judgment, questions of law are reviewed de novo. *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881 (Tex. App.—Austin 1999, pet. denied). To determine if a fact question exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We must consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex. 1979).

A force majeure clause in an oil and gas lease excuses a lessee from nonperformance of obligations contained in the lease if the nonperformance "is caused by circumstances beyond the reasonable control of the lessee." RICHARD W. HEMINGWAY, *The Law of Oil and Gas* § 7.11 (3d ed. 1991). Mr. and Mrs. Jones argue that, even if the force majeure clause applies to the original cessation of production in 2001 when the pipeline was disconnected – a matter with which they do not agree – a pipeline connection became available in February 2006. However, the well was not equipped to produce at that time. Therefore, under the very best scenario for Vortt, the argument proceeds that the force majeure clause in this case would afford ninety days to either resume

production or to pay shut-in royalty by no later than May 30, 2006. Neither of those things happened according to the argument made by Mr. and Mrs. Jones. We agree with them. As discussed in the following section of this opinion, the summary judgment proof shows that argument to be true. Vortt's force majeure argument is overruled.

The subject lease contained the following provision:

> Subject to the other provisions herein contained, this lease shall be for a term of two (2) years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled hereunder.

The above clause is the habendum clause. The habendum clause in a lease defines the duration of the estate that has been granted. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). Here, the two-year term provided for in the habendum clause is the primary term of the lease. The habendum clause then provides for an additional term, the secondary term, which is defined as: "as long thereafter as oil, gas or other mineral is produced from said land or land with which said land is pooled." Although there are leases that provide that in order to extend the primary term a well need only be capable of production, a secondary term such as the one in this case requires actual production in paying quantities before the primary term is extended. *Id.* An oil and gas lease, like the one in this case, creates a determinable fee that automatically terminates upon the happening of the event by which it is limited. In this case, that event is a cessation of production. *See Gulf Oil Corp. v. Reid*, 337 S.W.2d 267, 269 (Tex. 1960).

The word "produced," as used in the habendum clause in this lease, means "production in paying quantities." *Gulf Oil Corp.*, 337 S.W.2d at 269; *Dreher v. Cassidy Ltd. P'ship*, 99 S.W.3d 267, 269 (Tex. App.—Eastland 2003, no pet.). "[P]roduction in paying quantities" addresses not only the amount of production, "but also the ability to market the product at a profit." *Gulf Oil Corp.*, 337 S.W.2d at 269-70.

As we have said, this well produced gas for several years but had not produced since at least November 2001 when the gas purchaser disconnected the well. It was still disconnected as of July 14, 2006. The unavailability of a market does not excuse the failure to produce, and the lease terminates unless it is kept in force by some other provision in the lease. *Gulf Oil Corp.*, 337 S.W.2d at 270.

6

Although the lack of a market will not excuse the failure to produce during either the primary term or the secondary term of a lease of this nature and even though the habendum clause generally controls the duration of the lease, other provisions might extend the term provided for in the habendum clause. One such provision is that providing for the payment of shut-in royalties. For instance, the lease in this case contains the following shut-in royalty provision:

> While there is a gas well on said land or on lands pooled therewith and if gas is not being sold or used off the premises for a period in excess of three full consecutive calendar months, and this lease is not then being maintained in force and effect under the other provisions hereof, Lessee shall tender or pay to Lessor annually at any time during the lease anniversary month of each year immediately succeeding any lease year in which a shut-in period occurred one-twelfth (1/12) of the sum of $1.00 per acre for the acreage then covered by this lease as shut-in royalty for each full calendar month in the preceding lease year that this lease was continued in force solely and exclusively by reason of the provisions of this paragraph. If such payment of shut-in royalty is so made or tendered by Lessee to Lessor, it shall be considered that this lease is producing gas in paying quantities and this lease shall not terminate, but remain in force and effect. The term "lease anniversary month" means that calendar month in which this lease is dated. The term "Lease year" means the calendar month in which the lease is dated, plus the eleven succeeding calendar months.

Vortt claims that it kept the lease alive by the payment of shut-in royalties. Shut-in royalty provisions provide for a substitute for production and will extend the term of a lease if its provisions are met. *Hydrocarbon Mgmt., Inc. v. Tracker Exploration, Inc.*, 861 S.W.2d 427 (Tex. App.—Amarillo 1993, no pet.) (citing RICHARD W. HEMINGWAY, *The Law of Oil and Gas* § 6.5 (2d ed. 1983)). Regardless of whether a clause that provides for shut-in royalty expressly provides, a well must be capable of producing in paying quantities at the time it is shut in, or the shut-in royalty clause will not extend the term of the lease. *Hydrocarbon Mgmt.*, 861 S.W.2d at 432-33. A well is capable of producing in paying quantities if, when the well is turned on, it will flow "without additional equipment or repairs." *Anadarko Petroleum Corp.*, 94 S.W.3d at 558 (quoting with approval *Hydrocarbon Mgmt.*, 861 S.W.2d at 433-34).

Except for conclusory statements in affidavits and pleadings, the summary judgment evidence in this case shows that this well had not been connected to a pipeline from November 2001 to at least July 2006. Further, the summary judgment evidence shows that the gas from the well

7

could not enter a pipeline without a compressor; there had not been a compressor on this well in some five or six years. Summary judgment evidence provided by Vortt's manager of production in July 2006 revealed that the well still was not equipped to produce.

The summary judgment evidence shows that the well was not capable of producing in paying quantities at the time it was shut in. But, even if the summary judgment evidence raised a genuine issue of material fact as to whether the well was capable of producing in paying quantities at the time that it was shut in, the summary judgment evidence conclusively shows that Vortt did not pay the shut-in royalties in a timely manner.

The summary judgment evidence shows that Vortt did not tender shut-in royalties to Mr. and Mrs. Jones until July 21, 2006, and then it tendered shut-in royalties for what appears to be five years. The lease contained a clause that required the lessors to notify the lessee that shut-in royalty payments were delinquent. It is Vortt's position that notice was not proper under the terms of the lease.

The summary judgment evidence establishes that Mr. and Mrs. Jones timely sent the required notice to Vortt on March 24, 2006. On July 24, 2006, Mr. and Mrs. Jones filed an amended answer to Vortt's lawsuit as well as a counterclaim against Vortt. The instrument contained requests for admissions. Vortt was requested to admit or deny receipt of the notices required under the leases. Vortt failed to answer requests for admissions served upon it by Mr. and Mrs. Jones, and the requests were deemed admitted without the necessity of a court order. *See* TEX. R. CIV. P. 198.2.

Vortt filed a motion requesting that the trial court strike the deemed admissions and allow Vortt to amend its answers to the requests. Vortt did not obtain a ruling on the motion. A party must obtain a ruling on a motion to withdraw deemed admissions. Otherwise, those matters covered by the admissions are conclusively established. *See Cont'l Carbon Co. v. Sea-Land Serv., Inc.*, 27 S.W.3d 184, 190 (Tex. App.—Dallas 2000, pet. denied). The summary judgment evidence shows that notice of the failure to pay shut-in royalties was proper.

The summary judgment evidence shows that Vortt did not tender shut-in royalties to Mr. and Mrs. Jones until July 21, 2006. The tender of shut-in royalties was not timely. For this additional reason, the shut-in royalty clause did not extend the term of this lease.

8

Because the summary judgment evidence shows that this lease terminated for lack of production, unexcused by the force majeure clause in the lease, and because the summary judgment evidence shows that shut-in royalties were not timely made, the trial court did not err when it granted summary judgment that the lease had terminated. Vortt's first four issues on appeal are overruled.

In its fifth issue, Vortt claims that it had raised issues of ratification, laches, adverse possession, and repudiation that would preclude the entry of a summary judgment. Because adverse possession, or limitations, is the only one of those issues in which Vortt makes any argument or to which it gives any citations to authority or references to the record in its brief, we will not address the other issues. TEX. R. APP. P. 38.1.

Limitations is an affirmative defense that must be pleaded. TEX. R. CIV. P. 94. Mr. and Mrs. Jones argue that the affirmative defense of adverse possession was not raised by Vortt until it filed its response to their motion for summary judgment. However, Vortt filed an amended answer on March 13, 2007, in which it raised this affirmative defense as well as others. Mr. and Mrs. Jones objected to the filing of this amended answer and moved to strike it. In their motion, Mr. and Mrs. Jones point out that the motion for summary judgment was set for hearing on March 20, 2007, after several earlier postponements. They also state in their motion that they did not receive the amended answer until March 16, 2007. However, they failed to obtain a ruling on the motion to strike. In its subsequent order granting judgment, the trial court stated, among other things, that it had considered "the pleadings on file in this Cause."

A party should file an amended pleading no later than seven days before a trial. TEX. R. CIV. P. 63. Unless the record reflects that the court denied leave to amend, we are to assume the trial court considered the amended pleading. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490-91 (Tex. 1988). We will presume that leave to amend was granted if the motion for leave is filed within seven days of the hearing and (1) the trial court states in the order granting summary judgment that all pleadings were considered, (2) the record does not indicate that an amended pleading was not considered, and (3) the opposing party does not show surprise. *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 276 (Tex. 1996).

In this case, although Vortt did not file a motion for leave to file the amended answer, the trial court in the order granting summary judgment states that all pleadings were considered. The

amended answer was on file at the time the order granting summary judgment was entered. The record does not indicate that the amended answer was not considered, and the record does not show surprise. We hold that Vortt's amended pleading was before the trial court.

When a plaintiff moves for summary judgment on its own cause of action, it must establish every element of its claim as a matter of law. *Nelson v. Regions Mortgage, Inc.*, 170 S.W.3d 858, 864 (Tex. App.—Dallas 2005, no pet.). Once the movant establishes its right to summary judgment, the nonmovant must present evidence raising a genuine issue of material fact to avoid entry of a summary judgment. *Clear Creek Basin Auth.*, 589 S.W.2d at 678. Except for an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, the nonmovant must expressly present to the trial court any ground it claims will avoid movant's entitlement to judgment, such as those set out in Rules 93 (Certain Pleas to be Verified) and 94 (Affirmative Defenses). TEX. R. CIV. P. 93, 94. Further, the nonmovant must present summary judgment proof when necessary to establish a fact issue on those matters. *City of Houston*, 589 S.W.2d at 678.

We have already held that the summary judgment evidence, when reviewed under the well-known standards of review, establishes as a matter of law that the lease terminated by its own terms. Vortt claims that, if that is so, it nevertheless has raised a genuine issue of material fact regarding its claim of adverse possession. We disagree.

Vortt bases its adverse possession claims on the three-year and the five-year statutes of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.024-.025 (Vernon 2002). Each of these statutes requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021 (Vernon 2002).

We find *Natural Gas Pipeline Co. of America v. Pool*, 124 S.W.3d 188 (Tex. 2003), to be instructive. In *Pool*, the supreme court discussed adverse possession of the mineral estate. An oil and gas lease is actually a deed rather than a lease. The lessor grants a fee simple determinable to the lease and retains a possibility of reverter and the right to receive royalties. So long as the lease is in effect, the lessee owns the oil and gas in place and has the exclusive right to possess, explore for, and produce the minerals. When the lease expires, title and these exclusive rights revert to the

10

lessor.  To establish ownership by adverse possession, the lessee must show that, after the lease's expiration, it adversely possessed the mineral.  This is not satisfied by evidence of surface activities consistent with leasehold operation but requires proof of actual possession of the minerals by drilling or producing.  *Id.* at 193.

Vortt's summary judgment evidence failed to create a question of fact on adverse possession.  There was no evidence that it drilled a new well, recompleted an existing well in a new formation, produced any oil or gas, or sold any production from this lease.  Vortt points to evidence that it maintained lease signs, but this is the type of activity the supreme court attributed to a holdover tenant and is not evidence of adverse possession of the mineral estate.  Vortt's fifth issue on appeal is overruled.

In its sixth issue, Vortt requests that we act on the issue only if we reverse the granting of the summary judgment.  Because we are not reversing the trial court's order granting summary judgment, we need not address the sixth issue.

The orders granting judgment are affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


May 29, 2009

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.


11