Opinion filed May 29, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed May 29, 2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00159-CV

                                                      _________

 

                   VORTT
EXPLORATION COMPANY, INC., Appellant

 

                                                             V.

 

                   EOG
RESOURCES, INC.; JAN-LO OPERATING INC.;

                   DOUGLAS
S. KING ASSOCIATED PERMIT AGENTS;

                 TAMMY
CUPIT; SUPERIOR PETROLEUM COMPANY;

             PHYLLIS
JONES; AND DAVID RANDALL JONES, Appellees

 



 

                                          On
Appeal from the 29th District Court

 

                                                      Palo
Pinto County, Texas

 

                                                  Trial
Court Cause No. C-41524

 



 

                                             M
E M O R A N D U M   O P I N I O N

Because
the trial court correctly granted summary judgment that an oil and gas lease
had terminated and because it correctly forfeited the bond that had been issued
in connection with the issuance of a temporary restraining order, we affirm.[1]








Vortt
Exploration Company, Inc. obtained an oil, gas, and mineral lease from Hugh
Green and his wife, Wauneta.  The lease was dated December 27, 1980, and
covered property that is the subject of this lawsuit.  The lease was for a
primary term of two years Aand
as long thereafter as oil, gas or other mineral is produced from said land or
land with which said land is pooled [under the lease terms].@  David Randall Jones and
his wife Phyllis Jones purchased in two separate transactions 86.5 acres of the
property covered by the lease.

The
property became a part of the L.H. Green Unit II.  A gas well was completed on
property within the unit but adjacent to the property that Mr. and Mrs. Jones
later purchased.  That well is the subject of this lawsuit.  No other wells
were drilled in the unit.  Production from the well began sometime in 1981.  In
November 2001, the gas purchaser quit taking the gas from the well and
disconnected its pipeline.  At the time of the hearing on a motion for summary
judgment filed by Mr. and Mrs. Jones, the well had not been connected to any
other pipeline.

On
December 21, 2005, Almoth H. Green executed a permit allowing EOG Resources,
Inc. to conduct geophysical operations across his property.  Mr. and Mrs. Jones
took the position that the 1980 lease had terminated by that time.

Vortt,
however, did not believe that the lease had terminated; and it filed a lawsuit
against EOG, Mr. and Mrs. Jones, and several other individuals and entities. 
Vortt sought a temporary restraining order, a temporary injunction, and a
permanent injunction to prevent the proposed geophysical operations.  It also
sought a judgment for damages resulting from those operations as well as a
declaration that Vortt held the only valid oil, gas, and other mineral lease
upon the property covered by the well.[2]

The
trial court granted Vortt a temporary restraining order and set the bond for
the temporary restraining order at $10,000.  Vortt made the bond.

EOG
filed its answer to Vortt=s
claims and also filed a counterclaim in which it sought damages for the
wrongful issuance of the temporary restraining order.  It also sought attorney=s fees. 








On
July 24, 2006, Mr. and Mrs. Jones answered Vortt=s
lawsuit, and they also filed a counterclaim against Vortt.  As did EOG, Mr. and
Mrs. Jones claimed damages for the wrongful issuance of the temporary
restraining order.  Additionally, they sought a declaratory judgment that the
subject lease had expired by its own terms.  Because they believed that the
lease had expired and because Vortt remained in possession of the property, Mr.
and Mrs. Jones also sought damages for breach of contract, fraud, and
trespass.  They also counterclaimed against Vortt for attorney=s fees and exemplary
damages.  Mr. and Mrs. Jones sought no other relief from anyone.

Mr.
and Mrs. Jones filed a traditional motion for summary judgment in which they
claimed that the primary term of the 1980 lease had expired by its own terms. 
Even though Vortt sought no relief under the 1989 lease, Mr. and Mrs. Jones
also claimed that the primary term of that lease had expired.  The trial court
entered its written order granting the motion for summary judgment on
May 14, 2007, and held that there had been no production under either
lease from December 2001 through the time of the filing of this lawsuit.  The
court further held that Vortt had not paid shut-in royalty as required by the
1980 lease.  For those reasons, the trial court held that both leases had
terminated by their own terms for nonproduction, and it awarded attorney=s fees to Mr. and
Mrs. Jones.  The trial court also held that the temporary restraining
order was wrongfully obtained, and it forfeited the bond to Mr. and Mrs. Jones
and EOG as damages. 

Vortt
challenges the action of the trial court in multiple issues.  It also raises
three concerns about this court=s
jurisdiction.

Preliminarily,
even though Vortt is the party that filed this appeal, it now claims that we
cannot proceed with it.  We formerly abated this appeal upon learning of a
bankruptcy filing by Superior Petroleum.  After a review of the proceedings,
we, on our own motion, reinstated the appeal as to all parties other than
Superior Petroleum.  Vortt claims that there has been no compliance with Tex. R. App. P. 8.3.  That rule applies
to reinstatement at the request of a party.  We reinstated this appeal on our
own motion.  An appellate court has the inherent power to control its own
docket.  This preliminary argument is not well taken and is overruled.

Next,
Vortt addresses the timeliness of its notice of appeal.  Appellees make no
argument on appeal that it was anything other than timely.  This preliminary
argument is also overruled.

Finally,
Vortt argues that the orders granting judgment in this case are not final and
that this court does not have jurisdiction in its own appeal.








When
Vortt filed this appeal, we were concerned that the orders granting judgment in
this case might not be final, and on July 11, 2007, we informed the parties and
the trial court of our concern.  Afterward, we received a supplemental clerk=s record, and that
supplemental clerk=s
record contained, among other things, two orders: an order of severance
regarding EOG and an order of severance pertaining to Mr. and Mrs. Jones.  The
order of severance regarding EOG was signed by the trial court on October 11,
2007, and the order of severance pertaining to Mr. and Mrs. Jones was signed by
the trial court on October 25, 2007.  In the EOG order of severance, the trial
court made this handwritten notation:  AThe
severed cause is now appealable.@ 
The Jones order of severance contains this typewritten statement: AThe severed cause, for
which an interlocutory appeal had been prosecuted by Plaintiff, is now final. 
The Clerk shall notify the Eleventh Court of Appeals, Eastland, Texas, of the
severance, the new Cause Number and include a copy of this Order.@

Generally,
appellate review is confined to appeals of final judgments, unless otherwise
authorized by statute.  See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195
(Tex. 2001) (in which it is stated that Athe
general rule, with a few mostly statutory exceptions, is that an appeal may be
taken only from a final judgment@). 
When there is no conventional trial on the merits, a final judgment is one in
which the trial court finally disposes of all claims and all parties.  Lehmann,
39 S.W.3d at 205.  A judgment is made final neither by the mere use of the word
Afinal@ nor by simply stating that
the order is appealable.  Id.  The trial court must clearly indicate
that it intended to dispose of the whole case.  Id.  An appellate court
might find it necessary to review the record in order that it might determine
whether a judgment is final.  Id.








We
believe that this record clearly shows that the trial court and everyone else
intended that the orders granting judgment in this case were final and
appealable judgments.  This is particularly true in light of the fact that,
when this court expressed its concern about finality, steps were taken that
indicated that, in the minds of the trial court and the parties, final and
appealable orders had been entered.  The trial court clearly intended that the
orders granting judgment were final because, after we had expressed our
concern, it took specific steps to indicate by specific language that the
orders granting judgment were final.  Vortt clearly thought so because it
appealed.  EOG and Mr. and Mrs. Jones apparently considered the orders
granting judgment to be final because they have raised no arguments otherwise. 
To the contrary, they express their belief on appeal that the orders granting
judgment are final.  All parties appear to have treated the orders granting
judgment of the trial court as final, and after considering the record, we hold
that to be the case.  See Lehmann, 39 S.W.3d at 206 (Aan order that all parties
appear to have treated as final may be final despite some vagueness in [it]@).  This preliminary
assertion is also overruled.

In
its first four stated issues, Vortt claims that the trial court erred when it
granted the motion for summary judgment filed by Mr. and Mrs. Jones because (1)
the force majeure clause excused any failure to produce the well; (2) the well
was producing appropriately at applicable times; and (3) Mr. and
Mrs. Jones did not properly notify Vortt that shut-in royalties were past
due.  Vortt also argues, in its fifth issue, that the trial court erred in
granting the motion for summary judgment because there were fact issues
concerning certain affirmative defenses that it raised.  Finally, in its sixth
issue, Vortt asks us to reverse the order granting judgment on its temporary
restraining order bond, as well as the attorney=s
fees in favor of Mr. and Mrs. Jones, if we were to reverse the order granting
summary judgment.

For
traditional motions for summary judgment, questions of law are reviewed de
novo.  St. Paul Ins. Co. v. Tex. Dep=t of Transp., 999 S.W.2d 881 (Tex. App.CAustin 1999, pet. denied). 
To determine if a fact question exists, we must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all the
evidence presented.  Goodyear Tire & Rubber Co. v. Mayes, 236
S.W.3d 754, 755 (Tex. 2007).  We must consider all the evidence in the light
most favorable to the nonmovant, indulging all reasonable inferences in favor
of the nonmovant, and determine whether the movant proved that there were no
genuine issues of material fact and that it was entitled to judgment as a
matter of law.  City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671 (Tex. 1979).








A
force majeure clause in an oil and gas lease excuses a lessee from
nonperformance of obligations contained in the lease if the nonperformance Ais caused by circumstances
beyond the reasonable control of the lessee.@ 
Richard W. Hemingway, The Law
of Oil and Gas '
7.11 (3d ed. 1991).  Mr. and Mrs. Jones argue that, even if the force majeure
clause applies to the original cessation of production in 2001 when the
pipeline was disconnected B
a matter with which they do not agree B
a pipeline connection became available in February 2006.  However, the well was
not equipped to produce at that time.  Therefore, under the very best scenario
for Vortt, the argument proceeds that the force majeure clause in this case
would afford ninety days to either resume production or to pay shut-in royalty
by no later than May 30, 2006.  Neither of those things happened according to
the argument made by Mr. and Mrs. Jones.  We agree with them.  As discussed in
the following section of this opinion, the summary judgment proof shows that
argument to be true.  Vortt=s
force majeure argument is overruled.

The subject lease contained the following provision:

Subject
to the other provisions herein contained, this lease shall be for a term of two
(2) years from this date (called Aprimary
term@) and as long
thereafter as oil, gas or other mineral is produced from said land or land with
which said land is pooled hereunder.

 

The
above clause is the habendum clause.  The habendum clause in a lease defines
the duration of the estate that has been granted.  Anadarko Petroleum Corp.
v. Thompson, 94 S.W.3d 550, 554 (Tex. 2002).  Here, the two-year term
provided for in the habendum clause is the primary term of the lease.  The
habendum clause then provides for an additional term, the secondary term, which
is defined as:  Aas
long thereafter as oil, gas or other mineral is produced from said land or land
with which said land is pooled.@ 
Although there are leases that provide that in order to extend the primary term
a well need only be capable of production, a secondary term such as the one in
this case requires actual production in paying quantities before the primary
term is extended.  Id.  An oil and gas lease, like the one in this case,
creates a determinable fee that automatically terminates upon the happening of
the event by which it is limited.  In this case, that event is a cessation of
production.  See Gulf Oil Corp. v. Reid, 337 S.W.2d 267, 269 (Tex.
1960).

The
word Aproduced,@ as used in the habendum
clause in this lease, means Aproduction
in paying quantities.@
Gulf Oil Corp., 337 S.W.2d at 269; Dreher v. Cassidy Ltd. P=ship, 99 S.W.3d 267,
269 (Tex. App.CEastland
2003, no pet.).  A[P]roduction
in paying quantities@
addresses not only the amount of production, Abut
also the ability to market the product at a profit.@  Gulf Oil Corp., 337 S.W.2d at 269-70.

As
we have said, this well produced gas for several years but had not produced
since at least November 2001 when the gas purchaser disconnected the well.  It
was still disconnected as of July 14, 2006.  The unavailability of a
market does not excuse the failure to produce, and the lease terminates unless
it is kept in force by some other provision in the lease.  Gulf Oil Corp.,
337 S.W.2d at 270.








Although
the lack of a market will not excuse the failure to produce during either the
primary term or the secondary term of a lease of this nature and even though
the habendum clause generally controls the duration of the lease, other
provisions might extend the term provided for in the habendum clause.  One such
provision is that providing for the payment of shut-in royalties.  For instance,
the lease in this case contains the following shut-in royalty provision:

While
there is a gas well on said land or on lands pooled therewith and if gas is not
being sold or used off the premises for a period in excess of three full
consecutive calendar months, and this lease is not then being maintained in
force and effect under the other provisions hereof, Lessee shall tender or pay
to Lessor annually at any time during the lease anniversary month of each year
immediately succeeding any lease year in which a shut-in period occurred
one-twelfth (1/12) of the sum of $1.00 per acre for the acreage then covered by
this lease as shut-in royalty for each full calendar month in the preceding
lease year that this lease was continued in force solely and exclusively by
reason of the provisions of this paragraph.  If such payment of shut-in royalty
is so made or tendered by Lessee to Lessor, it shall be considered that this
lease is producing gas in paying quantities and this lease shall not terminate,
but remain in force and effect.  The term Alease
anniversary month@
means that calendar month in which this lease is dated.  The term ALease year@ means the calendar month
in which the lease is dated, plus the eleven succeeding calendar months.

 

Vortt
claims that it kept the lease alive by the payment of shut-in royalties. 
Shut-in royalty provisions provide for a substitute for production and will
extend the term of a lease if its provisions are met.  Hydrocarbon Mgmt.,
Inc. v. Tracker Exploration, Inc., 861 S.W.2d 427 (Tex. App.CAmarillo 1993, no pet.)
(citing Richard W. Hemingway, The
Law of Oil and Gas '
6.5 (2d ed. 1983)).  Regardless of whether a clause that provides for
shut-in royalty expressly provides, a well must be capable of producing in
paying quantities at the time it is shut in, or the shut-in royalty clause will
not extend the term of the lease.  Hydrocarbon Mgmt., 861 S.W.2d at
432-33.  A well is capable of producing in paying quantities if, when the well
is turned on, it will flow Awithout
additional equipment or repairs.@ 
Anadarko Petroleum Corp., 94 S.W.3d at 558 (quoting with approval Hydrocarbon
Mgmt., 861 S.W.2d at 433-34).








Except
for conclusory statements in affidavits and pleadings, the summary judgment
evidence in this case shows that this well had not been connected to a pipeline
from November 2001 to at least July 2006.  Further, the summary judgment
evidence shows that the gas from the well could not enter a pipeline without a compressor;
there had not been a compressor on this well in some five or six years. 
Summary judgment evidence provided by Vortt=s
manager of production in July 2006 revealed that the well still was not
equipped to produce.

The
summary judgment evidence shows that the well was not capable of producing in
paying quantities at the time it was shut in.  But, even if the summary
judgment evidence raised a genuine issue of material fact as to whether the
well was capable of producing in paying quantities at the time that it was shut
in, the summary judgment evidence conclusively shows that Vortt did not pay the
shut-in royalties in a timely manner.

The
summary judgment evidence shows that Vortt did not tender shut-in royalties to
Mr. and Mrs. Jones until July 21, 2006, and then it tendered shut-in royalties
for what appears to be five years.  The lease contained a clause that required
the lessors to notify the lessee that shut-in royalty payments were
delinquent.  It is Vortt=s
position that notice was not proper under the terms of the lease.  

The
summary judgment evidence establishes that Mr. and Mrs. Jones timely sent the
required notice to Vortt on March 24, 2006.  On July 24, 2006, Mr. and Mrs.
Jones filed an amended answer to Vortt=s
lawsuit as well as a counterclaim against Vortt.  The instrument contained
requests for admissions.  Vortt was requested to admit or deny receipt of the
notices required under the leases.  Vortt failed to answer requests for
admissions served upon it by Mr. and Mrs. Jones, and the requests were deemed
admitted without the necessity of a court order.  See Tex. R. Civ. P. 198.2.  

Vortt
filed a motion requesting that the trial court strike the deemed admissions and
allow Vortt to amend its answers to the requests.  Vortt did not obtain a
ruling on the motion.  A party must obtain a ruling on a motion to withdraw
deemed admissions.  Otherwise, those matters covered by the admissions are
conclusively established.  See Cont=l
Carbon Co. v. Sea-Land Serv., Inc., 27 S.W.3d 184, 190 (Tex. App.CDallas 2000, pet. denied). 
The summary judgment evidence shows that notice of the failure to pay shut-in
royalties was proper.

The
summary judgment evidence shows that Vortt did not tender shut-in royalties to
Mr. and Mrs. Jones until July 21, 2006.  The tender of shut-in royalties was
not timely.  For this additional reason, the shut-in royalty clause did not
extend the term of this lease.








Because
the summary judgment evidence shows that this lease terminated for lack of
production, unexcused by the force majeure clause in the lease, and because the
summary judgment evidence shows that shut-in royalties were not timely made,
the trial court did not err when it granted summary judgment that the lease had
terminated.  Vortt=s
first four issues on appeal are overruled.

In
its fifth issue, Vortt claims that it had raised issues of ratification,
laches, adverse possession, and repudiation that would preclude the entry of a
summary judgment.  Because adverse possession, or limitations, is the only one
of those issues in which Vortt makes any argument or to which it gives any
citations to authority or references to the record in its brief, we will not
address the other issues.  Tex. R. App.
P. 38.1.

Limitations
is an affirmative defense that must be pleaded.  Tex. R. Civ. P. 94.  Mr. and Mrs. Jones argue that the
affirmative defense of adverse possession was not raised by Vortt until it
filed its response to their motion for summary judgment.  However, Vortt filed
an amended answer on March 13, 2007, in which it raised this affirmative
defense as well as others.  Mr. and Mrs. Jones objected to the filing of this
amended answer and moved to strike it.  In their motion, Mr. and Mrs. Jones
point out that the motion for summary judgment was set for hearing on March 20,
2007, after several earlier postponements.  They also state in their motion
that they did not receive the amended answer until March 16, 2007.  However,
they failed to obtain a ruling on the motion to strike.  In its subsequent
order granting judgment, the trial court stated, among other things, that it
had considered Athe
pleadings on file in this Cause.@

A
party should file an amended pleading no later than seven days before a trial. 
Tex. R. Civ. P. 63.  Unless
the record reflects that the court denied leave to amend, we are to assume the
trial court considered the amended pleading.  Goswami v. Metro. Sav. &
Loan Ass=n,
751 S.W.2d 487, 490-91 (Tex. 1988).  We will presume that leave to amend was
granted if the motion for leave is filed within seven days of the hearing and
(1) the trial court states in the order granting summary judgment that all
pleadings were considered, (2) the record does not indicate that an amended
pleading was not considered, and (3) the opposing party does not show
surprise.  Cont=l
Airlines, Inc. v. Kiefer, 920 S.W.2d 274, 276 (Tex. 1996).








In
this case, although Vortt did not file a motion for leave to file the amended
answer, the trial court in the order granting summary judgment states that all
pleadings were considered.  The amended answer was on file at the time the
order granting summary judgment was entered.  The record does not indicate that
the amended answer was not considered, and the record does not show surprise. 
We hold that Vortt=s
amended pleading was before the trial court.

When
a plaintiff moves for summary judgment on its own cause of action, it must
establish every element of its claim as a matter of law.  Nelson v. Regions
Mortgage, Inc., 170 S.W.3d 858, 864 (Tex. App.CDallas 2005, no pet.).  Once the movant
establishes its right to summary judgment, the nonmovant must present evidence
raising a genuine issue of material fact to avoid entry of a summary judgment. 
Clear Creek Basin Auth., 589 S.W.2d at 678.  Except for an attack on the
legal sufficiency of the grounds expressly raised by the movant in his motion
for summary judgment, the nonmovant must expressly present to the trial court
any ground it claims will avoid movant=s
entitlement to judgment, such as those set out in Rules 93 (Certain Pleas to be
Verified) and 94 (Affirmative Defenses).  Tex.
R. Civ. P. 93, 94.  Further, the nonmovant must present summary judgment
proof when necessary to establish a fact issue on those matters.  City of
Houston, 589 S.W.2d at 678.

We
have already held that the summary judgment evidence, when reviewed under the
well-known standards of review, establishes as a matter of law that the lease
terminated by its own terms.  Vortt claims that, if that is so, it nevertheless
has raised a genuine issue of material fact regarding its claim of adverse
possession.  We disagree.

Vortt
bases its adverse possession claims on the three-year and the five-year
statutes of limitations.  See Tex.
Civ. Prac. & Rem. Code Ann. ''
16.024-.025 (Vernon 2002).  Each of these statutes requires Aan actual and visible
appropriation of real property, commenced and continued under a claim of right
that is inconsistent with and is hostile to the claim of another person.@  Tex. Civ. Prac. & Rem. Code Ann. ' 16.021 (Vernon 2002).








We
find Natural Gas Pipeline Co. of America v. Pool, 124 S.W.3d 188 (Tex.
2003), to be instructive.  In Pool, the supreme court discussed adverse
possession of the mineral estate.  An oil and gas lease is actually a deed
rather than a lease.  The lessor grants a fee simple determinable to the lease
and retains a possibility of reverter and the right to receive royalties.  So
long as the lease is in effect, the lessee owns the oil and gas in place and
has the exclusive right to possess, explore for, and produce the minerals. 
When the lease expires, title and these exclusive rights revert to the lessor. 
To establish ownership by adverse possession, the lessee must show that, after
the lease=s
expiration, it adversely possessed the mineral.  This is not satisfied by
evidence of surface activities consistent with leasehold operation but requires
proof of actual possession of the minerals by drilling or producing.  Id.
at 193.

Vortt=s summary judgment evidence
failed to create a question of fact on adverse possession.  There was no
evidence that it drilled a new well, recompleted an existing well in a new
formation, produced any oil or gas, or sold any production from this lease. 
Vortt points to evidence that it maintained lease signs, but this is the type
of activity the supreme court attributed to a holdover tenant and is not
evidence of adverse possession of the mineral estate.  Vortt=s fifth issue on appeal is
overruled.

In
its sixth issue, Vortt requests that we act on the issue only if we reverse the
granting of the summary judgment.  Because we are not reversing the trial court=s order granting summary
judgment, we need not address the sixth issue.

The
orders granting judgment are affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

May 29, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]Although other parties are listed as Appellee, only EOG
Resources, Inc., Phyllis Jones, and David Randall Jones are parties to this
appeal.





[2]A lease on this property was executed in 1989.  Vortt
received that lease by various assignments but did not assert any rights under
that lease in the petition that it filed in this lawsuit.